| Iowa. | |
|---|---|
| 1 | 159 |
| 78 | 233 |
| 1 | 159 |
| 82 | 128 |
| 1 | 159 |
| d90 | 678 |
| 90 | 680 |
| 1 | 159 |
| 100 | 635 |
| 1 | 159 |
| 111 | 518 |
| 1 | 159 |
| 128 | 224 |

## HYDE *v.* WOOLFOLK AND BACON.

Under section 2404 of the Code, which provides that "evidence respecting handwriting, may be given by comparison made by experts, or by the jury, with writings of the same person which are proved to be genuine," the certificate of acknowledgment to a mortgage, purporting to be executed by the person whose handwriting is to be compared, does not prove the genuineness of the mortgage deed, or the genuineness of the signature of the grantor, for the purpose of admitting such signature as a standard by which the writing in controversy is to be proved or disproved.

Two obvious methods of proving the standard writing, are: first, by the testimony of a witness or witnesses who saw the party write the instrument or writing offered as the standard; and, secondly, the admission of the party, when not offered by himself; but the proof of the standard, however made, must be positive.

A witness offered as an expert to prove handwriting, who testified that "he was not an expert in the business of comparing handwriting; he had never made it a business to compare or detect feigned or forged handwritings; that in early life he had been a clerk in a store, afterwards an editor of a newspaper, and for the last fifteen years a lawyer, but not all the time engaged in practice; that he presumed he had some skill in comparing handwritings; he had during his life had occasion to examine a good deal of writing, but did not pretend to any extra skill over business men, but thought he was as good a judge as business men generally; and that he had been in the habit of examining bank bills for the purpose of testing their genuineness," was properly admitted to testify as an expert.

A witness offered as an expert to prove handwriting, who testified "that he

was a merchant; had been in the business about three years; had had occa-sion to examine to detect counterfeit bank paper; possessed some knowledge of handwriting; did not claim to be an expert; had only the ordinary knowl-edge of a person in his business, and of his age; and that he was in the habit of handling and examining bank bills," was properly admitted to testify as an expert.

The competency of a witness called as an expert to prove handwriting, does not depend upon any particular calling, but upon his intelligence, and means of knowledge as a business man.

### Appeal from the Lee District Court.

THIS suit was commenced by Hyde against Woolfolk and Bacon, in the District Court of Lee county, tried at the Jan-uary term, 1854, and a verdict was returned for the defend-ant, Bacon, and judgment rendered thereon.    Woolfolk failed to appear, and was defaulted.    The plaintiff appeals. The errors assigned, and the facts of the case, are sufficiently stated in the opinion of the court.

J. C. Hall, for appellant.

Samuel F. Miller, for appellee.

WOODWARD, J.—The facts of the case leading to the questions which arise, are as follows : By a writing, dated the 12th of August, 1851, signed by Hyde and Woolfolk, Woolfolk agrees to erect a barn for Hyde, by the 1st of May, 1852, and Hyde agrees to furnish all the materials for the barn, board Woolfolk and his hands, while engaged in the work, and to pay him " the sum of one hundred and twenty-five dollars, in manner following, to wit: one gray horse, valued at eighty-five dollars, and the balance in good cash notes."    On the same 12th of August, 1851, Woolfolk, and Bacon, as his surety, executes and delivers to Hyde a penal obligation, with a condition as follows: " Whereas the above bounden Hiram J. Woolfolk, has this day contracted with the said Charles J. Hyde, to build for him, on his farm (in, &c.,) a barn, which barn is to be finished according to a writ-ten contract (marked A.), by the 1st day of May, A. D. 1852.

Now, should the said Hiram J. Woolfolk, well and truly perform his contract as specified in said contract, then this obligation to be void; otherwise, to remain in full force and virtue in law. Witness," &c., signed by Woolfolk and Bacon.

The action is brought upon this bond, against Woolfolk and Bacon, the plaintiff alleging, that he has performed all his covenants and agreements, in said contract specified, but that said Woolfolk has neglected and refused to perform his agreement or any part thereof, and still does wholly neglect and refuse so to do,". &c. Woolfolk makes default. Bacon answers, alleging: First. That he did not undertake or promise in manner and form, &c. Second. That he did not sign the bond in the petition mentioned, and avers that his name affixed thereto was done without his knowledge, privity, or consent. And he adds other defences not material, in the view which we take of the case; also an affidavit of denial under the statute—to the sufficiency of which, objection is now made, on argument, for the first time, so far as appears. As this objection was not made below, we pass it. The trial took place on the 7th of January, 1854, and the jury returned a verdict for the defendant Bacon, and the court rendered judgment accordingly. A bill of exceptions was taken, and the cause brought to this court.

The first error assigned, is, that the court erred in admitting the mortgage in evidence as shown by the bill of exceptions. It appears, by the bill of exceptions, that Bacon, in order, by comparison of handwriting, to sustain his denial of the signature of the bond, in which he purported to be surety, offered in evidence a mortgage deed, purporting to be signed by him, and dated 8th of October, 1842, by which he conveyed in mortgage to one John B. Bacon, a tract of land, situate in the county of McDonough, state of Illinois, and to which deed is affixed the following certificate of acknowledgment:

" *State of Illinois,*   ⎱
*McDonough county,*  ⎰ ss.

    This day personally came before me, the undersigned,

clerk of the Circuit Court, in and for the county of McDonough, and state of Illinois, the within named grantor, James H. Bacon, who is personally known to me to be the identical person whose name is subscribed to the within and foregoing mortgage, to the said John B. Bacon, administrator of the estate of C. W. Bacon, deceased, as having executed the same, and acknowledged that he had made and executed the same to the said J. B. Bacon, administrator, &c., for the purposes and conditions therein mentioned.   In testimony whereof, I have hereunto set my hand, and affixed the seal of the said Circuit Court, at my office in Macomb, this eighth day of October, A. D. 1842.

[L. S.]     JAMES W. CAMPBELL, *Clerk*,
                By J. H. BAKER, *Deputy*."

This instrument did not purport to be recorded.  The defendant claimed that the mortgage deed proved its own genuineness, and the genuineness of the signature.  The plaintiff objected to its admissibility as evidence, for this purpose, but the court overruled the objection, and admitted the instrument.

In this we think the court erred.  The whole question stands on section 2404 of the Code, which is, that "evidence respecting handwriting, may be given by comparison made by experts, or by the jury, with writings of the same person, which are proved to be genuine."  The standard writing must be proved to be genuine.  The very idea of proving handwriting by comparison, implies of necessity, the *establishment* of the genuineness of the standard.  The court is not prepared to adopt the suggestion, that the standard writing may be proved by witnesses who have only seen the party write, for this is, in effect, fixing the standard by comparison; it is supporting a probability by a probability. Two obvious methods of proving the standard writing, are: first, by the testimony of a witness or witnesses who saw the party write it; and secondly, by the party's admission, when not offered by himself.  We do not mean to say, that these are the only methods, but only that the proof must be positive.

Let us look at some provisions of the statute which are said to bear upon this question. Section 1227, of the Code, provides, that "every instrument in writing, affecting real estate, which is acknowledged or proved, and certified as hereinbefore directed, may be read in evidence without further proof." May be read in evidence, of what? Of everything, or of anything, a party sets up? We think it is manifestly intended, of the contract, conveyance, or matter contained in it; and then, probably, not in all cases, and between all persons.

But is not such instrument evidence of the genuineness of the signature of the party? We think not. And two principal reasons present themselves to sustain that conclusion. First; by section 1228, of the Code, the *record*, or a *copy* of it, may be admitted in evidence, instead of the original; and secondly, a party may execute an instrument by the hands of another, and this is sometimes done; and when he adopts the act, the instrument is his—the execution of it is his, in the legal sense. What are the terms of the statute in relation to acknowledgments? Section 1219 of the Code, directs the officer to certify "that such person acknowledged the instrument to be his voluntary act and deed." He does not acknowledge the signature genuine; but if another actually used the pen, he adopts the signature. We are not inclined to place emphasis upon precise words, but it may be proper to refer to the second division of the same section, directing the officer to certify him to be the identical person, whose *name* is affixed to the deed, indicating that it is not necessary to certify to the genuineness of the signature.

It is further claimed, that this instrument was admissible under section 2407 of the Code. It may be doubted whether this section would apply to such an instrument as the one in question, inasmuch as section 1227 is a provision specially relating to such instruments, and section 2407 seems designed to bring other papers within the same rule. But it is not necessary to determine this, for if it is applicable to conveyances, still the remarks before made upon the execution and acknowledgment of the deed in question, would

be applicable.  By such evidence, a party might disprove a genuine signature.  In construing and applying the letter of the statute, we must look at the subject matter, the object and intent, and by so doing, we may lessen or obviate a difficulty.  It does not seem difficult to do this, in the case before us.  In 4 Phil. on Ev. (Cow. & Hill's notes), 478 to 492, is a collection of, probably, all the cases on the subject of evidence by comparison of handwriting.  These show conflicting decisions and different views.  In truth, this is one of those subjects which have not sprung into existence at once, in full maturity; but has become perfected through the experience and reflection of many minds.  Some decisions have been at *Nisi Prius*, and therefore, probably, without due thought.  Some seem to have been made without argument, and some, perhaps, hastily, which should have received more attention.  For instance, it has been held, that the standard writing might be proved by witnesses who have seen the party write, that is, in the ordinary manner, whilst it would seem very manifest that that is not the way to fix a standard.  That mode of proof does not help the matter. You do not advance any in this manner.  You want something more certain than the proposed writing to compare the latter with.  Again, an ordinary witness has been permitted to compare the two writings, and express his opinion, whilst this is just what it is the duty of the jury to do.  It is *their* opinion on this matter, which is wanted, or at least, is necessarily involved in their verdict.  No one can be permitted to take it away from them, and none but an expert, can be allowed to assist them.  Our statute appears to mean, that the jury alone may make this comparison, or they may have the aid of experts; and it is aid only, for if the jury must take the opinion of the experts, then the latter try the case; and further, if the expert differ, who decides between them?  Another singular opinion has been, that the standard writing must be one used in, and connected with, the case.  But how can this be held necessary, when we look at the object of the standard.  It is of no consequence, what the writing with which you compare, is; all you want is a

genuine handwriting; and it is, as respects the nature of the evidence, not material what instrument it is; nor whether the paper be blank in all except the signature; nor whether the writing be connected with the case or not. The object is only to prove, that the party wrote a certain signature or writing, by showing its similarity to another *proved* to be genuine, and this evidence seems to be superior in degree (though the same in kind), to the testimony of a witness who has only seen the party write, and that, it may be, but once or twice, or has received a few letters from him. In all these cases, it is comparison only; but in the one case, you have the standard present before the eye, and the opinion of the twelve jurors, instead of the one or two witnesses. Before leaving this part of the case, a word must be said upon a party offering to *disprove* his own writing, by his own. This opinion is not designed to express any views upon this branch of the subject of evidence by comparison. The cause before us, is brought here without any objection on that score, and only to test the admissibility of the deed as a standard. Under what restrictions, a party may offer his own writing, is a subject for future consideration.

The second and third errors assigned, relate to the admission of Sample and Box to testify as experts. Although the previous question would dispose of the case in this court, yet, as this second question may arise again, in the same or any other cause, we consider it. The question is as to the competency of these witnesses as experts, and, therefore, it is necessary to set out the substance of their testimony, bearing on their admissibility. F. Sample, being sworn as a witness, testified that "he was not an expert in the business of comparing handwriting; that he had never made it a business to compare or detect feigned or forged writings; that in early life he had been a clerk in a store, afterward an editor of a newspaper, and for the last fifteen years a lawyer, but not all the time engaged in practice; that he presumed he had some skill in comparing handwritings; that he had, during his life, had occasion to examine a good deal of writing, but did not pretend to any extra skill over business

men, but thought he was as good a judge as business men generally; and that he had been in the habit of examining bank bills for the purpose of testing their genuineness." Box, being affirmed, testified that he was a merchant; had been in the business about three years; had had occasion to examine to detect counterfeit bank paper; possessed some knowledge of handwriting; did not claim to be an expert; had only the ordinary knowledge of a person in his business and of his age; and that he was in the habit of examining and handling bank bills."

The introduction of these persons as witnesses, was objected to, upon the ground that they were not experts, competent to testify as experts. The objection was overruled, and the witnesses permitted to testify. It is now, again, objected, that to be admitted as experts, they should possess the highest skill or information on the subject in question; must have studied or pursued the science, trade or art to which the subject belongs. It is true that persons giving evidence on a matter pertaining to their particular science, trade or art, come more strictly and technically under the term "experts;" but we cannot consent to the proposition, that no others come within it, and are allowed to be witnesses, in any case. It may very probably be true, that none are to be taken as experts on matters pertaining to a particular calling, art or science, but those who are, or have been, practiced in such art or science. But there are many subjects of inquiry which do not belong to a particular art, &c., but on which a greater or less degree of knowledge is common to many men in different callings. Take the instance of bank bills. On these, the *best* expert would be a counterfeiter, and the next best, men employed in banks, or, perhaps, engravers; and then, the business men of the community. Now, the law does not require the testimony of the best of these, before the others can be admitted. The testimony of them all, is equal in grade, though it may differ in value or weight, as it comes from one or the other. It is so in the comparison of handwritings. The best *witness* may be a forger, or a banker, &c., but the testimony of a

merchant is of the same grade. Skill in judging of hand-writing is common to men of many callings, although one calling may produce a better expert on this subject than another. Accordingly, an "expert" is defined to be "a person instructed by experience." 1 Bouv. Law Dict. 501. The subject is considered in 1 Greenlf. Ev. 554, § 440, and the notes; 4 Phil. Ev. (Cow and Hill's notes) 483, note 258; 1 Smith's Lead. Cas. 541; 1 Stark. Ev. 127, 154. In these, the cases will be found. Our conclusion is, that the present inquiry did not require a witness of a particular calling as an expert, but that his admissibility depended on his means of knowledge as a business man, and his intelligence. We place no weight upon the fact, that a witness does not claim to be an expert, nor to be superior to others in judgment. In conclusion, we do not think the court erred in admitting these witnesses.

The fourth error assigned, is the giving the fourteenth instruction to the jury. We cannot determine whether this was error or not. This depends upon the proof in the case. The statement of evidence in the bill of exceptions is imperfect and obscure, and it is not said that that is all there was on the trial.

The judgment is reversed upon the first error assigned, and remanded for further proceedings not inconsistent with this opinion.