National Bank of Chester County *vs.* Armstrong.

(Decided 12th November, 1886.)

---

THE NATIONAL BANK OF CHESTER COUNTY *vs.* WALTER ARMSTRONG.

*Evidence—Forgery—Comparison of Hand-Writing—Practice in Appellate Court—Bills of Exception—Practice.*

In an action against the indorser of a note the defence was forgery. After the plaintiff had proved by several witnesses acquainted with defendant's hand-writing, that in their opinion the disputed signature was genuine, the defendant testified that it was a forgery. He then proved, by a witness who had frequently seen the defendant write, and was familiar with his signature, that, in his opinion, the indorsement was not in the defendant's hand-writing. On cross-examination, for the sole purpose of refreshing his memory, the plaintiff's counsel exhibited to the witness a letter, which the defendant admitted was in his genuine hand-writing, both in the body and signature, written upon a subject foreign to the case, and the contents of which would not have been admissible, and were not admitted upon any issue joined in the action. He then pro-

8                    v. 66.

National Bank of Chester County *vs.* Armstrong.

posed to ask the witness to examine the same, and say whether he was still of the opinion that the indorsement upon the note was in the defendant's hand-writing. The Court, upon objection by the defendant, refused to allow the witness to examine the letter or the proposed question to be put to him. The plaintiff excepted. On appeal it was HELD :

1st. That the ruling of the Court was erroneous.

2nd. That to have allowed the witness to examine the letter for the purpose of refreshing his memory as to the defendant's hand-writing, and then say whether he was still of opinion the disputed signature was not genuine, would in nowise have infringed the rule which is well settled, in this State, against proof of hand-writing by comparison of hands.

A certificate or statement of facts appended to the record, and signed by one of the two Judges who sat at the trial, cannot be considered by the Appellate Court.

On appeal in a civil suit, the facts of the case, and what occurred at the trial, can be legitimately certified to the Appellate Court only through the medium of bills of exception taken to the rulings of the inferior Court, regularly signed and sealed by the Judge; and the duty of the Appellate Court is confined to a review of these rulings.

The proper course for the Court to have pursued,—assuming the statements of the certificate to be true,—was this : If the exceptions were tendered to the Judges for signature after the trial was ended, they should have embodied, or required to be embodied in them the facts stated in the certificate, before signing them; and if the exceptions were prepared and tendered for signature, and signed immediately after the rulings were made, and before they were reversed, the Judges should, after reversing the rulings, have withdrawn or erased their signatures—as they would have had a perfect right to do—and then required others to be prepared embodying such facts.

APPEAL from the Circuit Court for Cecil County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, IRVING, and BRYAN, J.

National Bank of Chester County *vs.* Armstrong.

*Albert Constable*, for the appellant.

*Henry W. Archer*, for the appellee.

MILLER, J., delivered the opinion of the Court.

This action was brought by the Bank, as payee, against Armstrong as endorser of a promissory note for $1400, and the defence was forgery. The case was tried upon issue joined on the plea of *non assumpsit*, and at the trial two exceptions were taken by the plaintiff to the rulings of the Court. As these rulings were the same in each exception, only one of them need be stated, and it is substantially as follows:

After the plaintiff had proved by several witnesses acquainted with defendant's hand-writing, that in their opinion the disputed signature was genuine, the defendant himself testified that it was a forgery, and that he had never endorsed such a note. He then proved by a witness who had frequently seen the defendant write, and was familiar with his signature that in his opinion this endorsement was not in defendant's genuine hand-writing. On cross-examination the witness said that this opinion was based upon the fact that the defendant's hand-writing was heavier and larger than the endorsement of his name on the note sued on. The plaintiff's counsel then, for the purpose of *refreshing the witness' memory*, and for no other purpose as they announced to the Court, exhibited to the witness a letter which had previously, during his examination been shown to the defendant, and which he admitted to be in his genuine hand-writing both in the body and signature, (but which had been written upon a subject foreign to this case, and the contents of which would not have been admissible, and were not admitted upon any issue joined in this action,) and proposed to ask the witness to examine this letter, and then say whether he still retained the opinion expressed in his examination-in-

chief, viz., that the defendant's name endorsed on the note in suit was not in his genuine hand-writing. But the defendant objected and the Court sustained the objection, and refused to allow the witness to examine the letter or the proposed question to be put to him, and to this ruling and action of the Court the plaintiffs excepted. In the other exception the same question was asked of another witness and the same ruling made.

To have allowed these witnesses to examine this letter for the purpose of refreshing their memories as to the defendant's hand-writing, and then say whether they were still of opinion the disputed signature was not genuine, would in no wise have infringed the rule which is well settled in this State against proof of hand-writing by comparison of hands. It is not the case of placing the disputed signature and a genuine writing before a witness who had no antecedent knowledge on the subject, and allowing him from the mere inspection of the two to say whether in his opinion they were both written by the same person. These witnesses both testified that they had frequently seen the defendant write and were familiar with his signature, and by reason of their knowledge of his hand-writing thus acquired were competent and qualified to testify as to the genuineness *vel non* of this endorsement. Speaking from that knowledge they said in their examination-in-chief that in their opinion it was not genuine. Then on cross-examination after having given as a reason for their opinion that the defendant wrote a heavier and larger hand, the cross-examining counsel for the purpose of refreshing their memories as to the character of his hand-writing, exhibited to the witnesses a letter and signature which the defendant himself admitted he had written, asked them to examine it and then to say whether they were still of the same opinion. We see no objection whatever to this course of cross-examination, and are clearly of opinion it should have been allowed.

In *Smith vs. Walton*, 8 *Gill*, 77, where *non est factum* was pleaded to a single bill, one of the witnesses called by the plaintiff to prove the defendant's signature, testified that although from his knowledge of the general character of the defendant's hand-writing, he believed the signature of the surname to be genuine, he could not say so as to the Christian name, and could not therefore prove the whole signature. The plaintiff's counsel then for the purpose of refreshing his memory exhibited to the witness a draft purporting to be drawn by the defendant in favor of the witness, and which the witness proved was signed by the defendant in his presence, and the Court said : " This course of examination was perfectly legitimate, and if the witness after having thus re-touched and strengthened his recollection of the defendant's hand-writing by inspecting the draft, had stated that he believed the disputed signature to be genuine, as the result of a comparison between that signature and the impression he had formed in his mind, as to the general character of the defendant's writing derived from antecedent knowledge, no legal exception could have been taken to the testimony." We are unable to perceive any substantial difference between what was held a legitimate course of examination in that case, and what the Court below by the rulings complained of refused to allow in this.

But it is said that conceding there was error in these rulings, the plaintiff has sustained no injury thereby, and the judgment should not therefore be reversed. This contention is founded upon a certificate or statement of facts, appended to the record and signed by one of the two learned Judges who sat at the trial. From this statement it appears that before the trial was ended, and on the morning of the day succeeding that on which these rulings were made, the Court announced that it had reconsidered them, and told the plaintiff's counsel he could now examine the witnesses as proposed in the excep-

tions, and he had them called at the bar, and at the court-house door, but they did not answer; that he did not then ask the Court to withdraw a juror or to delay the cause in order to procure the attendance of these witnesses; that a third witness in regard to whom the same ruling had been made on the previous day was recalled and examined as proposed in the exceptions, and that he stated that his opinion remained unshaken and was rather strengthened than weakened by an inspection of the letter; that by consent of counsel on both sides the letter was exhibited to the jury, who examined it and compared it with the signature in dispute; that the testimony on both sides was closed, and the case was argued before the jury, under an instruction from the Court to the effect that to entitle the plaintiff to recover, it must satisfy the jury by a pre-ponderance of proof that the defendant's name endorsed upon the note sued on is in his genuine hand-writing. This is the substance of the statement.

Now were it competent for us to consider this certificate and the facts stated in it, there would still be grave doubt whether we could say the plaintiff suffered no injury by the rulings set out in the exceptions.   When these rulings were revoked the witnesses were not present to be cross-examined, and it does not appear that their absence was in consequence of any default on the part of the plaintiff. They were the defendant's witnesses, and there is nothing to show that the plaintiff or his counsel consented that they should be discharged on the first day of the trial and immediately after the rulings were made.   Nor did the Court of its own motion do any thing to procure their attendance, or offer to plaintiff's counsel the option of either going on, or having the case continued, or the trial postponed, until their attendance could be procured by attachment or otherwise.   Had this been done, and the plaintiff had elected to go on with the trial, it might well be said he had suffered no injury, but such does not

appear to be the case. It is undoubtedly within the power of a Court to reconsider, reverse, or change its rulings at any time during the progress of the trial, and if it is satisfied a mistake has been made it is its duty to do so, but when this is done, great care should be taken that no harm results to either of the litigant parties from such action.

But we need not decide what would have been our determination of this question, if the facts set out in this certificate were properly before us, because we are all clearly of opinion that we cannot consider them. This Court is strictly an appellate tribunal, and on an appeal in a civil suit like this, the facts of the case and what occurred at the trial, can be legitimately certified to us only through the medium of bills of exception taken to the rulings of the inferior Court, regularly signed and sealed by the Judge; and our duty is confined to a review of these rulings. On such an appeal what is outside of the exceptions is outside of the record. There is no statutory or other legal authority for the certification of facts to this Court, in such a case, by means of a certificate like this. In every such case, the judgment must stand or fall according as the rulings excepted to are decided to be correct or erroneous, unless it appears that the party appealing has suffered no injury by an erroneous ruling against him, and this must appear solely from the verdict and the rulings and facts embodied in the exceptions. That the rulings in the exceptions contained in this record, upon the assumption that they were erroneous (as we have decided them to be,) were injurious to the appellant cannot admit of doubt, for he was thereby deprived of the privilege of a legitimate cross-examination of his adversary's witnesses, and we must therefore reverse the judgment and award a new trial.

Before concluding we may say that the proper course for the Court to have pursued, (assuming the statements of the certificate to be true,) was this:—If the exceptions

Duling *vs.* Phila., Wilm. & Balto. R. R. Co.

were tendered to the Judges for signature after the trial was ended, they should have embodied or required to be embodied in them, the facts stated in the° certificate, before signing them , and if the exceptions were prepared and tendered for signature and signed, (as they purport to have been,) immediately after the rulings were made and before they were reversed, the Judges should, after reversing the rulings, have withdrawn or erased their signatures (as they would have had a perfect right to do,) and then have required others to be prepared embodying such facts.

*Judgment reversed, and*
*new trial awarded.*

(Decided 12th November, 1886.)