R. A. SANKEY, Appellee, v. ELIZA COOK, Executrix, Appellant.

1. **Proof of Handwriting**: EXPERT TESTIMONY: PROOF BY COMPARISON. In an action upon a lost contract, the plaintiff, for the purpose of proving the genuineness of the signature thereto, testified that he was acquainted with the handwriting of the defendant's testator, and offered in evidence a letter which he claimed was in said testator's handwriting, and then called an expert, who had seen the contract sued upon, by whom it was attempted to prove that the signature to said contract and that to the letter offered in evidence were in the same handwriting. *Held*, that the proof as to the genuineness of the handwriting of the letter was insufficient to warrant its acceptance as a standard for proof of the signature by comparison.

2. ———— : CONTRACTS OF DECEDENTS : TESTIMONY OF PARTIES TO ACTION.
Testimony of the plaintiff in an action upon a contract with one
since deceased that the signature to the contract, and a letter
offered in evidence as a standard for comparison therewith, are in
the handwriting of such deceased party, is not within the prohibi-
tion of section 3639 of the Code of 1873, excluding evidence of
parties to actions, and of persons interested therein, as to personal
transactions or communications with one deceased.

3. Estates of Decedents : FILING OF CLAIMS : STATUTE OF LIMITA-
TIONS. A claim against the estate of one deceased, which is con-
tingent upon the result of litigation independent of such claims,
will not be barred from participation in the proceeds thereof
because of the failure to file and prove the same within twelve
months after notice of letters of administration, especially where
at the time of such filing and proof the estate remains unsettled,
and is shown to be solvent, even though the liability of the estate
upon such claim became absolute, so far as the proceedings in the
district court were concerned, before the expiration of the twelve
months.

*Appeal from Jasper District Court.*—HON. D. RYAN,
Judge.

TUESDAY, FEBRUARY 3, 1891.

THIS is a proceeding in probate by which it is
sought to establish the liability of the estate of defend-
ant's testator on a lost written contract. From the
action of the district court allowing the claim, the
defendant appealed.—*Reversed.*

*Meredith & Ogg* and *Clements & Ward*, for appel-
lant.

*H. S. Winslow*, for appellee.

GRANGER, J.—I. The defendant is the adminis-
tratrix of the estate of S. C. Cook, deceased. The con-

1. PROOF OF
handwriting:
expert testi-
mony: proof
by compari-
son.

tract on which recovery is sought was
executed by S. C. Cook to the plaintiff and
was lost, while being used in the taking of
certain depositions in another case at
Wichita, Kansas. The pleadings put in issue the gen-
uineness of the signature of S. C. Cook to the contract.

One W. S. Walton was used by the plaintiff as an expert to testify to the genuineness of the signature to the contract by comparison. The standard for comparison was a letter signed, "S. C. Cook," which the plaintiff testified was in the handwriting of S. C. Cook. The plaintiff also testified that in January, 1888, he showed to Walton the original contract, and that it was written by S. C. Cook. Mr. Sankey also testified that he was acquainted with the handwriting of Mr. Cook. Upon this showing as to the genuineness of the standard, Mr. Walton was permitted to state that in his opinion the letter presented to him, and the contract that he saw in January, 1888, were in the same handwriting. The testimony of the plaintiff was by deposition, and the defendant moved to suppress the part showing that the letter and contract were in the handwriting of Cook, which was overruled, and defendant complains of the ruling.

The motion should have been sustained. It does not appear that the plaintiff saw Cook write the papers used as standards. The genuineness is established alone upon his opinion thereof, based on his knowledge of Cook's handwriting. The most that can be said is this: That Walton was of the opinion that the two writings were executed by the same hand, based on the opinion of Sankey that one was genuine. Code, section 3655, is: "Evidence respecting handwriting may be given by comparison made by experts or by the jury with writings of the same person which are proved to be genuine." Before the comparison can be made by the expert or jury, the genuineness of the standard writing must be proved, established, and no longer a question of fact in the case. It should be so that the court can say to the jury that the standard, as a matter of law, is genuine, and leave to the jury the inquiry whether the disputed signature was written by the same hand. Such a conclusive condition, as to genuineness does not arise from opinions based on knowledge of handwriting. This court has said that evidence of experts, from comparison of handwriting, is of the

lowest order of evidence, and unsatisfactory. *Whita-ker v. Parker*, 42 Iowa, 585. This court has also said: "It appears to us that the genuineness of the writing made the basis of comparison, called somètimes the 'standard writing,' should be proved by direct and positive evidence." *Winch v. Norman*, 65 Iowa, 186. And in *Hyde v. Woolfolk*, 1 Iowa, 159, it is said: "Two obvious methods of proving the standard are: *First*, by the testimony of a witness who saw the person write it; and, *second*, by the party's admission when offered by himself." It is said that these may not be the only ways of making such proof, but they indicate what is understood as "positive evidence."

II. It is urged that the testimony of the plaintiff was incompetent, under the provisions of Code, section 3639, the defendant being an executor, and that the testimony as to the writings was in regard to a personal transaction between the parties. Both the letter and the contract pertained to personal transactions between the parties, and what might have been the effect, if he had testified that he saw Cook sign them, or that he did sign them, we need not decide. His testimony was to the effect that, in his opinion, Cook signed them, basing the fact on his knowledge of Cook's handwriting. That was not testifying to a personal transaction within the meaning of the statute. The object of the statute is to so close the lips of the living party to the transaction that he cannot give testimony in regard thereto, that, because of the decease of the other party, he cannot dispute, if untrue. If Cook was alive he could not dispute Sankey's evidence that, in his opinion, the papers were in his (Cook's) handwriting; that is, it is not so in the nature of a personal transaction that he could dispute it as such. It is but evidence of a fact existing independent of a personal transaction.

*2. ——: contracts of decedents: testimony of parties to action.*

III. It is urged that, notwithstanding the recitals of the written contract, the evidence shows that there was no consideration for it. We will not quote the evidence. We think it such that the district court might

find there was a consideration. In fact, we think it should have so found, as it did, and that there is no error in that respect.

IV.  The contract on which the plaintiff seeks to recover is as follows:

"NEWTON, IOWA, December 22, 1885.

"Whereas, R. A. Sankey has advanced some money to me, in the purchase of bonds, on what is known as the 'Anderson Mining Railway Property,' and has allowed me to use his name in the foreclosure of said bonds; and whereas, some litigation has grown out of the foreclosure of said bonds, or in connection with the Anderson matters, and said R. A. Sankey, by reason thereof, may become liable because of the use of his name:  Now, therefore, in consideration of the premises, I hereby agree to hold said R. A. Sankey harmless from all expenses, costs or damages in said proceedings, and in all matters connected with or growing out of the purchase of said bonds.

"S. C. COOK."

In the foreclosure proceedings referred to in the contract, the Keokuk National Bank intervened, and such proceedings were had that a personal judgment was entered against the defendant for twenty-nine hundred and eleven dollars and fifty-six cents, and costs, and from such judgment the defendant (in this suit) appealed to this court, where the cause is still pending undetermined.  The claim of the plaintiff, therefore, is contingent, and depends entirely upon the liability of Sankey in the foreclosure proceeding.  It will be seen that the date of the contract on which recovery is sought is December 22, 1885, at which time the foreclosure proceedings were pending in the district court, and judgment against the defendant entered October 20, 1888.  The defendant executrix gave notice of her appointment as such, on the ninth day of November, 1887, and the plaintiff filed his claim for allowance on the eighteenth day of January, 1889.  The defendant

pleads and insists that it is barred by the statute of limitations under the following provision of Code, section 2421: "All claims of the fourth of the above classes, not filed and proved within twelve months of the giving of the notice aforesaid, are forever barred, unless the claim is pending in the district or supreme court, unless peculiar circumstances entitle the claimant to equitable relief." The claim of the defendant must be sustained, "unless peculiar circumstances entitle the claimant to equitable relief." The "circumstances" of this claim are "peculiar" in this: That it depended entirely on an independent action pending adjudication. If that adjudication was favorable to plaintiff Sankey he had no claim; if against him, under his contract with Cook, he had. Cook and Sankey were, in interest, parties in that action; Sankey being the representative of Cook. It was, in an important, though perhaps not technical, sense an adjudication of this claim. If that adjudication was to be favorable to Sankey, and hence favorable to Cook, no good purpose was to be subserved by additional costs to establish a contingent claim. For all practical purposes, the administratrix, with that known and pending proceeding, was as well advised as to the true condition and liabilities of the estate as if a contingent claim had been filed and proved, for the actual liability must then depend on the other adjudication. The estate, under a finding of the district court, is solvent, unsettled, and with money to pay this claim, if established. No prejudice to the estate has resulted from the delay. The plaintiff was a resident of Kansas, and, as it appears, did not know of the adverse decision of the district court until December 20, 1888, which was after the year had expired. This court has heretofore attached much importance to the fact that an estate was solvent and unsettled, in determining the equities of such a case. The fact that the estate is unsettled is spoken of as "most controlling," and it is said: "When the estate remains unsettled, all should be paid if there are sufficient means * * * unless there exists

some legal difficulty, or unless to so order would work injustice to others having higher or equal claims upon the funds." *Brewster v. Kendrick*, 17 Iowa, 479; *Johnston v. Johnston*, 36 Iowa, 608. The case of *Senat v. Findley*, 51 Iowa, 20, under quite similar facts, holds to a rule that should control this case, unless we are to disregard it, which equity forbids. We think the peculiar circumstances of this case show the plaintiff entitled to equitable relief, and that the claim is not barred by the statute of limitations.

Because of the error designated in the introduction of testimony the judgment is REVERSED.