THE STATE OF IOWA, Appellee, v. PHILIP FARRINGTON, Appellant.

| 90 | 673 |
|----|-----|
| 101 | 393 |
| 90 | 673 |
| 103 | 116 |
| 90 | 673 |
| 122 | 82 |

| 90 | 673 |
|----|-----|
| 124 | 210 |
| 90 | 673 |
| 128 | 224 |
| 128 | 225 |

| 90 | 673 |
|----|-----|
| 137 | 431 |

Continuance: ABSENCE OF WITNESSES: SUFFICIENCY OF SHOWING. An application for a continuance on the ground of the absence of witnesses, which fails to show proper diligence on the part of the applicant to obtain the testimony of such witnesses or their presence in court, nor shows reasonable grounds for believing that the attendance or testimony of the witnesses will be procured at the next term of· court, should be overruled. (1)

Forgery: EVIDENCE: CROSS-EXAMINATION. Where, upon the trial of an indictment for the forgery of an indorsement upon a draft, made to the order of P., the cashier of the bank, which sold the draft to P., having testified, on behalf of the state, to the facts attending the purchase, *held*, that the defendant was not entitled to show, on cross-examination of the witness, that about a week or ten days after the purchase P. ordered payment on said draft stopped. (2)

SAME: PROOF OF HANDWRITING: COMPETENCY OF WITNESS. One who has known another for twenty years, is acquainted with his handwriting, and has seen him write, is competent to testify whether a given writing is in his handwriting. (3)

SAME: STANDARD FOR COMPARISON. The signature of one in a hotel register, made about the time of the writing in controversy, and shown to be genuine, may be used as a standard for comparison, in proof of handwriting. (4)

SAME. The signature to a motion for a continuance in a prosecution for forgery, purporting to be that of the defendant, and to which is attached the certificate of the clerk of the court, that the same was subscribed by the defendant in his presence, *held,* to be competent as a standard for comparison in proof of the handwriting of the defendant in such case, without proof that the signature was genuine. (5)

SAME: EVIDENCE FOR PROSECUTION NOT PRODUCED BEFORE GRAND JURY. The introduction of such a writing as a standard for comparison of handwriting is not erroneous under the provisions of section 4421 of the Code, prohibiting the state from introducing any witness who was not examined before the grand jury, except upon certain conditions. (6)

*Appeal from Jones District Court.*—HON. JAMES D. GIFFEN, Judge.

WEDNESDAY, JANUARY 24, 1894.

THE defendant was indicted, convicted, and. sentenced for the crime of forgery, and appeals.—*Affirmed.*

*J. W. Jamison* and *W. P. Wolf* for appellant.

*John Y. Stone,* Attorney General, *Thos. A. Cheshire,* and *F. O. Ellison,* County Attorney, for the state.

KINNE, J.—The charging part of the indictment in this case is:

"Philip Farrington, at and within said county, and before the finding of this indictment, to wit, on the twenty-fourth day of February, did have in his custody and possession a certain bill of exchange or draft, which said bill of exchange was and is as follows, that is to say:

'$780.00.     First National Bank,    No. 64,813.
                              'TIPTON, IOWA, 1–10–1890.

'Pay to the order of Philip Pfarr ($780.00) seven hundred eighty dollars.    To Hide and Leather National Bank, Chicago, Ill.

'C. W. HAWLEY, Cashier.'

And on the back of said bill of exchange was then and there written a certain forged indorsement of the said bill of exchange, which said forged indorsement is as follows, that is to say: 'Philip Pfarr;' he, the said Philip Farrington, well knowing the said indorsement to be forged, on the day and year last aforesaid, in the county aforesaid, willfully and feloniously did utter and dispose of, and publish as true, the said indorsement of the said bill of exchange, so indorsed, with intent then and there to defraud one E. E. Snyder, contrary to and in violation of law.''

To this indictment, defendant pleaded not guilty.

I.   It is contended that the court erred in overruling the defendant's motion for a continuance. This motion was based upon the absence of one Bardwell, a resident of Colorado; one Eaton, a resident of Wilton Junction, Iowa, and Louisa Kalb, a resident of Crawford county, Iowa.  As to the witness Bardwell, it is shown that the defendant knew he was a resident of the state of Colorado; that prior to March 1, 1891, Bardwell had informed the defendant that he would be in Tipton about the latter date, and would remain there until April, 1891; that the defendant had intended to take his deposition, but, on learning that he was coming to Tipton, did not do so.  A subpœna was issued for this witness, but when, it does not appear.  Eaton is also said to be a material witness for the defendant. It seems a subpœna was issued for him, but the record before us fails to show when it was done.  Louisa Kalb lives beyond the reach of a subpœna.  She had been in Cedar county for three months, and, it is averred, expected to remain until after the March term of the Jones district court for 1891, but was called home, and, though expecting to return, has not done so.

Even if it be conceded that the proposed testimony of these three witnesses is material and competent, still the court did not err in its ruling.  This record discloses

the fact that this case had been tried once before; that
the defendant was arrested about a year prior to the
last trial.  It must be presumed, then, in the absence
of a showing to the contrary, that the defendant was
fully conversant with the witnesses he would need on
the trial for a sufficient length of time to have taken
their depositions, or, if within the reach of a subpœna,
to have had it served in due time.   There is no sufficient
excuse offered for failing to take the deposition of any
of these parties.  There is no diligence shown in attempt-
ing to secure these witnesses, or their depositions.   No
effort was ever made to take Eaton's deposition, nor
does it appear when the subpœna was issued for him.
Louisa Kalb, in fact, stayed in Cedar county until a
week before this application was filed, and then went
home, to Crawford county.  It does not appear when
the subpœna was issued for her.  The facts show neg-
ligence on part of the defendant in not securing this
evidence.  Again, the application does not conform to
the requirements of the statute, in this: that it fails to
state facts and show reasonable grounds for believing
that the attendance or testimony of the witnesses will
be procured at the next term of court, and this the
statute requires.   Code, section 2750.   The motion was
properly overruled.

II.   Hawley, the cashier of the bank that sold the
draft to Jacob Pfarr, the indorsement of which it is
claimed was forged, was asked as to the facts surround-
ing the purchase.   On cross-examination the defendant
attempted to show by the witness that, a week or ten
days after the purchase of the draft, Jacob Pfarr went
to the bank and ordered payment on said draft stopped.
This was clearly not cross-examination.   The witness
had not been interrogated on his examination in chief
as to the matters sought to be shown on cross-examina-
tion.   The ruling of the court was therefore correct.

III.   N. B. Anthony, a witness for the state, testified that he had lived in Stanwood twenty-one years, and was in the mercantile business; that he had known the defendant for twenty years; was somewhat acquainted with his handwriting, having seen him write. He was then asked to look at the signature in controversy, and state whether or not, in his opinion, it was in the defendant's handwriting. The defendant's counsel objected to the question as calling for incompetent testimony. The objection was overruled, and the witness answered, "It looks some like his." The defendant moved to strike the answer because it disclosed that the witness was incompetent to testify upon the subject inquired about, and because the evidence was incompetent. This motion was overruled. The examination then proceeded as follows: "*Q*. Mr. Anthony, what is your best judgment as to whether that is his handwriting?" Same objection, and overruled. "*A*. Of course I wouldn't swear that that is his handwriting unless I saw him put it there. *Q*. No, of course, but what is your best judgment as to its being his handwriting?" To this the same objection was made, and same ruling had. "*A*. Well, sir, I should think it very similar to his handwriting. *Q*. But you will have to answer the question, Mr. Anthony." The defendant's counsel moved the court to strike out all the answers of the witness, as being incompetent. The motion was overruled. "Mr. Anthony, I want you to state what is your best judgment as to whether or not that is his handwriting. It is not a question of similarity. *A*. Well, I should say that it is in his handwriting. It is very similar to his handwriting. But, as to saying that it is positively in his handwriting, I couldn't say that without seeing him write *it*." Here the motion to strike the answers was renewed and overruled. To all these rulings the defendant at the time excepted.

Having in view the entire examination of this witness, we do not think the court erred in its rulings. The rulings are assailed upon two grounds: *First*, because the witness was not shown to be an expert, and qualified to testify; and, *second,* that the testimony in fact given was incompetent. There can be no question as to his being a competent witness. He had shown that he had been acquainted with the defendant for twenty years; that he was acquainted with his handwriting, and had seen him write. In *Hyde v. Woolfolk*, 1 Iowa, 167, it is held that in such cases the competency of a witness as an expert does not depend upon his having followed a particular calling, but rather "on his means of knowledge as a business man, and his intelligence." Every fact necessary to be established in the first instance to show his competency had been shown. It is now almost the universal rule that one who has seen a party write is competent to give an opinion as to the genuineness of his signature, in a proper case. 1 Greenleaf on Evidence, section 577; *Egan v. Murray*, 80 Iowa, 182; *Succession of Morvant*, 45 La. Ann. 207, 12 South. 349; *State v. Zimmerman*, 27 Pac. (Kan.) 999; *De La Motte's Case*, 21 How. St. Tr. 810; *Miles v. Loomis*, 75 N. Y. 288; *Bell v. Brewster*, 44 Ohio St. 690, 10 N. E. Rep. 679; *State v. Gay*, 94 N. C. 814; *State v. Stair*, 87 Mo. 268; *Long v. Little*, 119 Ill. 600, 8 N. E. Rep. 194; *Hopper v. Ashley*, 15 Ala. 457; *Moon v. Crowder*, 72 Ala. 79; *Woodman v. Dana*, 52 Me. 9; *Bank v. Armstrong*, 66 Md. 113, 6 Atl. Rep. 584; Rogers on Expert Testimony [2 Ed.], sec. 122. All the answers of the witness set out, except the last, were not responsive to the questions asked; and if it should be conceded that they were incompetent—a question we do not find it necessary to decide—and that the court erred in not striking them out, still the error was without prejudice to the defendant. The last answer was both responsive and competent, and it

embraced all and more than was in the prior answers. In no event could the defendant have been prejudiced by the court's rulings.

IV.   Elliott testified, as a witness for the state, that he was acquainted with the defendant; that he kept a hotel at Stanwood, Iowa; and that, at various times near the time of the commission of the alleged forgery, the defendant had stopped at his hotel, and he had seen him write his name in the hotel register.   The purpose of the testimony was to identify as genuine the signatures of the defendant on this hotel register preliminary to its introduction in evidence.   The defendant moved to strike the evidence as incompetent, immaterial, and irrelevant.   The motion was overruled, and an exception taken.   Counsel's claim is that the hotel register could not be used as a standard of comparison, because it was not relevant or material to any other issue in the case.   Whatever may be the rule elsewhere, this court has recognized the right to use, for the purposes of comparison, the defendant's genuine signature, wherever found, if made about the time of the alleged forgery.   *Hyde v. Woolfolk*, 1 Iowa, 164; *State v. Calkins*, 73 Iowa, 128.   See *Sankey v. Cook*, 82 Iowa, 125.   In . the *Calkins case*, the writing sought to be proven as a standard was, as in the case at bar, a signature of the defendant in a hotel register, which was proven to be his signature by one who saw him write it, and it was held proper.   What we have said in this division of the opinion applies also to the defendant's exceptions to the admission of the testimony of Mershon, identifying a check presented to Mershon, with the defendant's name indorsed thereon,

V.   It appears that on March 13, 1891, and preceding the commencement of the trial below, the defendant filed a motion for a continuance.   It purported to be signed by him, and below his signature was the following: "Subscribed in my presence, and

sworn to before me, by Philip Farrington, this thirteenth day of March, 1891. R. M. Bush, Clerk." Witness Hawley, being recalled, and shown to be competent to testify as an expert, said he had never had any correspondence with the defendant, and had never seen him write. The state then offered in evidence the signature of the defendant to his showing for a continuance. It was objected to as incompetent as a standard of comparison, as there was no evidence that the signature offered was written by the defendant, and, further, because no notice had been given the defendant that such a paper would be offered in support of the indictment, and the same was not before the grand jury. The objections were overruled, and the signature admitted as genuine, and was thereafter used by the state as one of the standard writings for the purpose of comparison, all against the defendant's objection. Our statute provides that "evidence respecting handwriting may be given by comparison made by experts, or by the jury, with writings of the same person which are proved to be genuine." Code, section 3655. It was held in *Hyde v. Woolfolk*, 1 Iowa, 162, that there were two methods of proving the standard writing: *First*, by the testimony of a witness who saw the party write; and, *second*, by the party's own admission, when not offered by himself. It was also said that there might be other ways of proving the genuineness of the standard writing. The statute is absolute in its requirement that the genuineness of the standard writing must be established, but makes no provision as to how it shall be done. Here the defendant, for a legitimate purpose, attaches his signature to a paper which he finds necessary or desirable to file in the case. It is filed, and becomes a part of the record in the case. The defendant's name purports to be signed to the paper. The clerk certifies officially that that signature was put there by the defendant, before him, and in his

presence. On the faith of such a showing, and the
genuineness of the defendant's signature thereto, and
in reliance thereon, the court is asked to grant him a
continuance. He has thereby most solemnly said to
the court, in the very case on trial, that his signature
to that paper is genuine. The case is not like *Hyde v.
Woolfolk, supra*, for in that case the acknowledgment
did not show that the signature was his own, while in
the case at bar his signature was made in the presence
of the officer, and it was adopted as the defendant's by
him in attempting to secure a continuance on the
strength of the showing made, and which was necessa-
rily signed by him. Surely, where one signs his name
to a paper, which he voluntarily makes a part of the
record in the case, and upon which he invokes the
action of the court, he must be held, in that case, at
least, to be estopped from thereafter questioning the
genuineness of his signature to such paper. As sup-
porting this doctrine, see *Moore v. United States*, 91 U.
S. 270; *Wilber v. Eicholtz*, 5 Col. 240; *Vinton v. Peck*,
14 Mich. 287.

VI. Our statute provides, in substance, that in
support of the indictment the state can not introduce
any witness who was not examined before the grand
jury, and the minutes of whose testimony were not
taken by the clerk of the grand jury, and presented
with the indictment to the court, unless the county
attorney shall have given the defendant four day's
notice, in writing, before the commencement of the
trial. And if the county attorney desires to introduce
such evidence, and has not given the notice for want of
time since he learned that the evidence could be
obtained, he may move the court for leave to introduce
it; and, if the court sustains the motion, the defendant
must elect whether the cause shall be continued on his
motion, or the trial proceed, and the evidence be intro-
duced. Code, section 4421. This evidence was not

before the grand jury, no notice was given the defendant that it would be produced in support of the indictment, and no motion was made by the county attorney, as the statute provides. The provision of the statute is, as we have seen, that no witness can be examined in support of the indictment by the state, unless he was examined before the grand jury, or unless notice is given. Now is the offered signature a witness within the language and intent of the statute? We think not. The word "witness," as used in the statute, evidently refers to a person, not to an inanimate object or thing. See Bouvier's Law Dict., tit. "Witness;" Webster's Dict., tit. "Witness." We are not warranted in extending the provision of the statute so as to cover a kind of evidence not mentioned therein. We discover no error in admitting the signature in evidence.

VII. It is said that the verdict is not sustained by the evidence. We do not feel called upon to discuss the evidence in detail. We think it fully justified the jury in finding defendant guilty. His explanation of the means by which he came into possession of the draft was exceedingly unsatisfactory and wholly improbable. His conduct and conversation after he knew that the draft was claimed to be the property of another was not that of an innocent man. We have no doubt, from the record before us, of the defendant's guilt.

After a patient examination of the entire record, and the consideration of all errors assigned, we discover no reason for disturbing the verdict. AFFIRMED.