ROBERT STEENHOEK, Administrator, Appellee, v. SCHOONOVER TRUST COMPANY, Trustee, Appellee; L. R. WATTERS, Appellant.

MAY 15, 1928.

1380

*C. J. Cash* and *George C. Gorman*, for appellant.

*J. E. Remley* and *B. E. Rhinehart*, for appellee.

DE GRAFF, J.—This action nominally involves three parties: the plaintiff administrator, the trustee, Schoonover Trust Company, and the interpleaded defendant, L. R. Watters. The fighting issue is between the plaintiff and the interpleaded defendant only. The Schoonover Trust Company is a mere stakeholder, and is not concerned with the outcome of this case.

The historical facts essential in understanding the legal quarrel are as follows: On April 14, 1911, the defendant Schoonover Trust Company, an Iowa corporation, received, as trustee, a trust fund created by the will of one Thomas Watters. The bequest reads as follows:

"I will, devise and bequeath to the Schoonover Trust Company, the sum of one thousand ($1,000.00) in trust, nevertheless for Frances May Watters, daughter of L. R. Watters, to be invested and kept out at interest until she shall become of age when the principal and accumulated interest shall be paid to her provided her parents shall certify that in their judgment she is

competent to care for said funds, otherwise it shall remain in trust until they shall so certify."

At that time (1911), Frances Watters was about nine years of age. She married Robert Steenhoek in February, 1921. Due to enlargement of the heart, her health failed, shortly after her marriage, and she continued to grow worse until her death, September 12, 1923.

On August 16, 1923, L. R. Watters and Amy (Mrs. L. R.) Watters signed the following writing:

"We, L. R. Watters and Amy Watters, parents of Frances Watters, who under the will of Thomas Watters was left a certain sum of money in care of the Schoonover Trust Company, of Anamosa, Iowa, do hereby consent to and direct that the Schoonover Trust Company, pay to the said Frances Watters all funds in their possession, due her under the terms of the said will."

This instrument of written consent was delivered to the trustee.

It is conceded of record that, on August 16, 1923, the following written order or direction, known as Exhibit A, was signed by Frances Steenhoek:

"To the Schoonover Trust Company of Anamosa, Iowa.

"Pay to L. R. Watters all funds in your bank that are due to me under will of my great-uncle, Thomas Watters and allow him to receipt for all such money for me.

"Signed this 16th day of August, 1923.

"Mrs. Frances Steenhoek."

On September 11, 1923, the written assignment known as Exhibit B was signed by Frances Steenhoek.

"Anamosa, Iowa, September 11, 1923.

"For value received I hereby sell, assign, and transfer to L. R. Watters all my right, title and interest in a certain bequest and legacy left to me in will of Thomas Watters late of Jones County, Iowa, and I hereby direct the Schoonover Trust Company or other executor or custodian of said fund to pay the same to said L. R. Watters as full release of the said fund.

her
"Mrs. Frances X Steenhoek
mark
"Witnessed by Mrs. L. R. Watters and John Watters."

The death of Frances Steenhoek occurred about 3 o'clock A. M., September 12, 1923.

Upon the trial, it was further conceded by all parties hereto that the Schoonover Trust Company held the sum of $1,745.59, being the amount of the legacy to Frances Watters with the accumulations thereto to date, and that this amount is due either to the plaintiff, as administrator, or to L. R. Watters, the interpleaded defendant. This is the factual setting.

The interpleaded defendant, L. R. Watters, claims under an oral contract with the decedent, Frances Steenhoek, subsequently evidenced by a written assignment by her of the funds to him. The issue is strictly between the plaintiff administrator and the interpleaded defendant, L. R. Watters. At the threshold of this case, it is pertinent to inquire: Did the interpleaded defendant establish a prima-facie case?

The appellee-administrator urges, in the first place, that there was no proof of an oral contract between Frances and her father in relation to the assignment of the trust fund. This is  quite immaterial, even if true, if the pleaded written assignment was established by competent proof. Exhibit B is the assignment in question, and the signature of Frances Steenhoek thereto was duly proved if it may be said that Mrs. L. R. Watters was a competent witness in this particular. She was the wife of L. R. Watters, the assignee of the trust fund under the written assignment. Was she competent, under Section 11257, Code of 1924, which expressly refers to a transaction with the witness and a party since deceased? The material question is: Did Mrs. Watters take any part in the transaction or communication between deceased and the interpleaded defendant? The fact that she was the wife of L. R. Watters did not make her per se incompetent. The fact that she signed the instrument as a witness had nothing to do with the validity of the instrument. Her signature to said instrument may be ignored, without affecting its legal efficacy. The statute does not prohibit a wife from testifying that she saw her daughter, since deceased, sign an instrument, unless the wife disqualified herself by personal participation in the transaction. See Sankey v. Cook, 82 Iowa 125.

Mrs. Watters testified that she had nothing to do with the

making of Exhibit B, and that she took no part in the transaction between her husband and her daughter "as to this paper, marked Exhibit B. I remember my husband, bringing this paper home from Anamosa. Q. Now I'll ask you again if you saw your daughter make her mark to this paper. [Objection that the witness is incompetent, calling for transaction with person since deceased. Overruled. Exception.] A. Yes. Didn't see any other parties sign as witness in her presence."

She further testified that, prior to the making of the assignment Exhibit B, she overheard a conversation between her daughter Frances and her husband (L. R. Watters), in which she took no part.

"I heard her tell him she was going to turn that money over to him; that she didn't want Bob [her husband] to have anything she ever had; that he had treated her so bad."

The appellant established *prima facie* that the assignment Exhibit B bore the genuine signature of Frances Steenhoek.

The appellee urges in the second place that there is no proof of delivery by the maker of Exhibit B to the appellant. It appears, however, that the written assignment has always been in the possession of the appellant, from the time of the making thereof. It was in the home of the appellant when it was signed by Frances Steenhoek. The Schoonover Trust Company in its answer alleged that L. R. Watters holds an order, as well as an assignment of all funds in its hands belonging to the said Frances Steenhoek, and "has presented them heretofore to the defendant, demanding payment thereof."

The production and profert of the instrument by the interested party are proof of possession, and possession is presumptive proof of delivery. Delivery is a question of intention. The term signifies any manifestation whereby the grantor makes known his intention that the deed is complete, and is to take effect. It is complete at the moment when the deed is in the hands or power of the grantee, with the consent of the grantor, and with his intent that it should operate and inure as a muniment of title to the grantee. 2 Words and Phrases 1960 *et seq*; 18 Corpus Juris 478.

It may be observed that appellee in the case at bar does not

deny the execution of the instruments in question, but simply alleges that:

"The said pretended oral contract, written order, and assignment, set out as a part of said petition, were obtained by said L. R. Watters by undue influence practiced upon the said Frances Steenhoek, deceased, and the same are void and of no effect whatsoever."

In the light of our conclusion that prima-facie proof exists that the instrument Exhibit B was signed by the maker, Frances Steenhoek, and that there was a delivery of said instrument to the interpleaded defendant, L. R. Watters, we ask, Upon what theory was the trial court justified in directing a verdict against the interpleaded defendant and in favor of the plaintiff administrator? The assignment Exhibit B imports a consideration. *Gary v. Northwestern Mut. Aid Assn.*, 87 Iowa 25.

At the close of the trial, the doctrine of fiduciary relationship was asserted. This was presumed from the terms of the will of Thomas Watters; and the trial court, in passing upon the  plaintiff's motion for a directed verdict, held that there was a fiduciary relation existing between the father, L. R. Watters, and the daughter, Frances Steenhoek. We do not accept this viewpoint. Clearly, the confidential relation, if such it was, arising by virtue of the last will and testament of Thomas Watters terminated on August 16, 1923, when the written consent was given to the trustee by the parents of Frances Steenhoek. There was no evidence whatsoever of fiduciary relationship between L. R. Watters and his daughter Frances, so far as her business affairs were concerned. No burden of proof in the first instance rested upon L. R. Watters, as an interpleaded defendant, to establish his good faith as to the transaction in question. He was under burden to introduce a genuine assignment. He was under no obligation, without any allegation of controlling fiduciary relation, or any evidence thereof, to assume the burden which the trial court, upon the conclusion of the testimony, ruled that the appellant had failed to meet. True, no hard or arbitrary rule has been prescribed as to when a fiduciary or confidential relation exists. Each case must depend upon its own peculiar facts. See *Dawson v. National Life Ins. Co.*, 176 Iowa 362, 377.

In the absence of evidence bearing on the issue of fiduciary

relationship, and in the absence of such an issué presented by the pleadings, we discover no ground for directing the verdict in favor of the plaintiff. Wherefore, the judgment entered is reversed and the cause remanded.—*Reversed and remanded.*

STEVENS, C. J., and ALBERT, MORLING, and WAGNER, JJ., concur.