# J. F. SWEENEY v. TEN MILE OIL & GAS CO.

### APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY.

Argued October 22, 1889—Decided November 4, 1889.
[To be reported.]

1. A private letter, the only proof of which is the testimony of a witness that he received it by mail, and that it had the signature of a certain person, but the witness had no knowledge of the signature, is not admissible in evidence.

(*a*) The plaintiff, under a contract with the defendant company, procured a purchaser for its franchises and property, who in good faith accepted the company's proposition providing the terms of sale, " the titles and franchises to be subject to proper examination and approval."

2. In such case, there being sufficient evidence that the sale was not consummated, by reason of the defective titles to some of the property under lease to the defendant, the plaintiff was entitled to recover the compensation stipulated for in his contract, notwithstanding the sale was not so consummated.

3. An assignment of error specifying that " The court erred in submitting to the jury a question of fact about which there was no evidence," but not showing what question of fact it was, is not according to rule, and is not entitled to consideration.

Before STERRETT, GREEN, CLARK, McCOLLUM and MITCHELL, JJ.

No. 143 October Term 1889, Sup. Ct.; court below, No. 153 February Term 1889, C. P.

On December 15, 1888, a summons in assumpsit was served in an action by John F. Sweeney against the Ten Mile Oil & Gas Company. The defendant pleaded not guilty.

At the trial on June 6, 1889, the plaintiff proved a contract in writing executed by himself and the defendant company, a corporation, on March 26, 1887, in the shape of a " Proposition for the sale of the property and franchises of the Ten Mile Oil & Gas Company: First, the plant, including the franchises and all territory owned by the company, to be sold to or by Mr. John F. Sweeney, of Wheeling, W. Va., at and for the sum of thirty thousand dollars cash. And if sold to or by him within

sixty days from this date, Mr. Sweeney is to have two thousand dollars for negotiating the sale." From time to time, by indorsements upon this contract, the time for making the sale was extended to thirty days after March 26, 1888.

The plaintiff introduced testimony claimed to show that the defendant company had leaseholds, for oil and gas operations, covering about 4,000 acres of land in Washington county; that on or about April 18, 1888, he produced to the defendant company, as a purchaser for its franchises and property, one W. P. Logan of Philadelphia, representing himself and other Philadelphia parties; that on April 20th the defendant company made a communication in writing to " W. P. Logan and others," as follows: " GENTLEMEN : The conclusion arrived at in our meeting to-day was as follows, to wit: To sell you our charter, which is in proper legal shape and in vital form, covering $25,000 of stock, of which about $22,000 is paid up, transfer with it all our rights, titles, franchises, &c., embracing about 4,000 of leases, with the Meloy well finished and the Bane well about 1,039 feet deep, all debts and dues to be liquidated up to date of closing sale, and the titles and franchises to be subject to proper examination and approval. In consideration of which you are to pay us the sum of $30,000, as follows: " etc.; that upon consultation with his associates this proposition was accepted by telegram from Mr. Logan on April 24th; but that the contract for the purchase was not consummated, for the reason that the titles in respect of some of the leaseholds were defective.

The defendant company resisted the action on the grounds that the compensation to the plaintiff was to be paid only in the event of a sale ; that no sale had been made ; that no contract or agreement of sale had been entered into with Mr. Logan, and that the defendant was in no way responsible for the failure to have the contract executed. The defendant claimed, also, that the alleged purchasers had no real intention of buying the property and franchises of defendant, and to show this, the defendant called Mr. John W. Donnan, who on behalf of the proposed purchasers had been examining the titles to the lands covered by the leases. The witness was shown a letter, marked exhibit 11, and testified: " This is a letter I received by mail, and it bears the signature of Joseph D. Potts,

but I have no knowledge of the signature." The defendant then made the following offer:

Mr. John W. Donnan having testified that exhibit 11, purporting to be a letter from Col. Joseph D. Potts, was received by him in due course of mail, and the evidence already adduced by plaintiff showing that Col. Potts was said to be a party in interest represented by Mr. Logan, who employed Mr. Donnan as his attorney, defendant's counsel now offers this letter in evidence for the purpose of showing that Col. Potts, although interested, was not interested as a purchaser in the way alleged by Mr. Logan.

Objected to: 1. Because the letter is not sufficiently proven to entitle it to go in evidence. 2. Because it is twenty-eight days after the time when Mr. Logan dropped out of the contract, and 3. Because it is, generally, irrelevant and incompetent.

By the Court: Objection sustained; exception.[1]

This letter, exhibit 11, was dated September 28, 1888, addressed to John W. Donnan, Esq., over the signature of Jos. D. Potts, and read as follows:

"DEAR SIR: Our Mr. Dilkes has made a partial report to us on the land which Mr. Logan was in negotiation for, and which we know as the Amity lands; but, while his report is not a perfect one, nor absolutely conclusive, it is such that it has not encouraged us to proceed any further in the matter. We do not ourselves wish to go into the gas business, nor oil business. Our whole object has been to effect a sale of pipe in such a way as to have satisfactory results. Our purpose in sending Mr. Dilkes to see you, and to inspect the lands, was, if possible, to effect an arrangement with other parties than the Messrs. Logan, provided such parties, familiar with the gas business, and satisfactory to us, could be found to take hold of the enterprise, and with such financial assistance as we might be able to give in the way of credit on the pipe, to push it to completion. At present this does not seem easy to do. If we should hereafter meet with such parties, and we shall try to do so, we will probably take the subject up again provided the owners of the land, or the parties to whom they may sell, would then be in a mood to negotiate, in which case, we would communicate with you. Very truly yours."

Charge of Court below.

At the close of the testimony, the court, McIlvaine, P. J., charged the jury:

This is an action by John F. Sweeney against the Ten Mile Oil & Gas Company, and the suit grows out of a written contract that was executed by the plaintiff and the defendant company. A material part of that contract reads as follows: "Proposition for the sale of the property and franchises of the Ten Mile Oil & Gas Company: First, the plant, including the franchises and all the territory of our company to be sold to, or by, John F. Sweeney, of Wheeling, West Va., at and for the sum of thirty thousand dollars cash; and if sold to or by him within sixty days after this date, Mr. Sweeney is to have two thousand dollars for negotiating the sale."

It is admitted on both sides that a slight modification of this contract was afterwards made, allowing the sale to be made, in place of for $30,000, for $10,000 cash, and the balance to be secured by notes; and with this modification, the contract stands as I have read it. The interpretation of this contract, so far as I have read it, and so far as it is written, is for the court, and the important words in the contract to be interpreted are the words "sale" and the words "if sold." We instruct you that this contract means that there was to be an actual sale. And the word "sale," as defined by Story, is, "The transfer of the absolute title to property for a certain agreed price." It is a contract between two parties, one of whom clearly parts with the property in the thing sold, and the other parts with a valuable consideration. [There was no actual sale, as we understand the evidence in the case before the court, but it is claimed there was a contract to sell, which the defendants failed to carry out.] [2] You will see, gentlemen, there is a difference between the word sale and a contract to sell. And we instruct you, that the word employed here by these parties contemplated an actual sale. [The first question then arises: Did Mr. Sweeney, who had an option on this plant, make, as far as he was concerned, an actual sale of it? And did the defendant company refuse to deliver the property, and is that the reason the franchise is still in the hands of the defendant company, and not in the hands of the alleged purchaser?] [3]

There is, I believe, no evidence in the case to show that the

Charge of Court below.

parties ever did consummate the sale ; that is, that there ever was a perfect execution in regard to all the details of the sale. It appears that there were some things left undone at the time it was declared off by the parties. If that is the case, and you come to the conclusion from the evidence, as you no doubt will, that the sale never was completed, and that there never was an actual sale, then the next question arises, was there a contract to sell, and was the failure to consummate the sale under that contract due to the defendant company failing to do something that they were required to do under that contract of sale? [If Mr. Sweeney got so far along in this transaction as to have brought these parties together, so that a contract of sale was made, which included in it certain things to be done by the parties, and the defendant company failed to do those things which they were required to do, in order to consummate that sale, to make it an actual sale, then we think the plaintiff would be entitled to recover. Although he is only entitled to recover in case of an actual sale, yet the contract having gone so far that all it required of the parties was that they should do certain things, or perform certain details, contemplated in the contract of sale, he would be entitled to his money, if the failure to consummate the sale was by reason of the defendant company not doing that which they were bound to do. And we think, gentlemen, that is really the point in the case. It is admitted there was no actual transfer of this property; this defendant company still owns this plant, so far as the evidence in this case shows ; there is no evidence to the contrary. The contract of sale, if there was one entered into, was never fully consummated by a transfer of the stock and an assignment of the leases. But, if you believe there was a contract of sale made here, an agreement entered into by these parties looking to the transfer of the stock of this company, and also an assignment of the leases, which was to be consummated by the parties doing certain things, and that the defendant company failed to do that which they were required to do, and that that was the reason the sale was not consummated and the transfers made, then I say Mr. Sweeney ought not to be held responsible for that failure, if he has done all that he could do in consummating the sale, and the reason it is not consummated lies solely at the door of the defendant company.] [4]

Now, gentlemen, in the first place, there is some dispute about whether there ever was a contract of sale, and you will have to determine from all the evidence in the case, whether there ever was an agreement upon the conditions of sale. Did the parties come together, and have an understanding as to the exact things they had agreed on, and the exact things that were to be done on each side? If they did, that would be a contract of sale. Was everything agreed upon that had to be done, if not already done, in order to make a consummated sale? If it was, then there was a contract of sale. You will consider all the evidence in the case on this question; this telegram sent by Mr. Logan, and then what happened in pursuance of the proposition contained in the telegram, when the parties got together in Mr. Sayer's office, and at the other meetings of the parties; you will consider it all together, and then determine whether or not there was an agreement by the parties to sell this property. If you find there was a contract to sell the property, then the next question will be, what is the reason it was not consummated? Did the thing fail on account of the defendant company not doing something that they were bound to do?

[Now, the defendant company claims that the principal thing that was to be done, and the plaintiff, that the only thing that was to be done, was the examination of the titles to the leased farms. The defendant company claims they did everything on their part that was required at their hands to perfect these titles; while the plaintiff claims that they were in default, from the fact that some of these leases, so far as the record title was made to appear, were given by parties that had no title; that the purchaser was not bound to accept these leases in that condition, and that the defendant company failed to make these titles good when they could have done so, and that that was the reason why this trade failed to be consummated, and that the failure or want of consummation of the contract must be solely laid at their door. Now, gentlemen, you will take all the evidence in this case in regard to that matter, and you will determine from the evidence in the case whether or not that is correct; and if you find, as I said before, that there was a contract of sale that contemplated certain things to be done in order for its consummation, and that the defendant failed to

comply with the things they were required to do in that contract of sale, then the plaintiff ought to recover, because he has done everything that he possibly could do in consummating the sale, and the reason it is not consummated is the fault of the defendant. On the other hand, if you conclude there never was any contract of sale, but only dickering between these parties and they never came to any understanding at all, or even if they did come to an understanding, that it was the plaintiff's fault, or his purchaser's fault, that the sale never was consummated, then we think he ought not to recover.] [5]

Now, gentlemen, we are asked to instruct you as follows on the part of the plaintiff:

1. If the jury believe from the evidence that the plaintiff John F. Sweeney, produced to the defendant corporation a purchaser in the person of W. P. Logan, to whom the company made a proposition of sale, and that the said Logan in good faith accepted said proposition, then a sale was made and the plaintiff is entitled to recover the full sum of $2,000.

Answer: Affirmed, subject to what we have said in the general charge.[7]

2. If the jury believe from the evidence that the company made a proposition of sale, which the said Logan accepted in good faith, but that the sale failed to be consummated by reason of the defendant company's defective titles, then the plaintiff is entitled to recover.

Answer: Affirmed, subject to what we have said in the general charge.[8]

3. That the defendant company, in constituting John F Sweeney their agent for the sale of their leases, franchises, etc., practically represented that their titles were at least marketable, and if the jury believe that the sale fell through by reason of defects in the company's titles, the plaintiff is entitled to recover.

Answer: Refused. We do not think the plaintiff was the agent of the defendant company.

The defendant asks us to instruct you as follows:

1. By the terms of the agreement between Mr. Sweeney and the defendant company, Mr. Sweeney was only to receive the sum of $2,000 in the event of a sale of the property or its withdrawal by the company; and, as the property was not sold or

withdrawn he cannot recover in this action, unless the jury should find that the defendant accepted as a purchaser the person produced by Mr. Sweeney, and that the final consummation of the sale was prevented by the improper conduct of the defendant.

Answer : Affirmed.

2. The ordinary rule as to broker's commissions does not apply to this case, but it is to be decided according to the terms of the written contract between plaintiff and defendant.

Answer : Affirmed.

3. In the contract between the plaintiff and the defendant, the defendant did not insure the titles of the properties upon which it held leases, and when the plaintiff took the option contained in the contract, he took the risk of the titles proving defective so far as that might affect his right to compensation.

Answer : Affirmed.

4. If the jury should find from the evidence that the sale of the property failed because of defects in some of the titles, this will not justify a verdict for the plaintiff, unless they also find that the defects were such as the defendant company could have removed and that it improperly failed so to do.

Answer : Affirmed.

5. The paper of April 20, 1888, and the telegram of April 24, 1888, do not constitute a contract of sale, because the papers themselves and other evidence in the case show that additional papers were to be executed in order to close the transaction.

Answer : This point is answered in this way : In determining whether or not there was a contract of sale, the paper of April 20, 1888, and the telegram of April 24, 1888, must be taken with the other evidence in the case.

The jury returned a verdict in favor of the plaintiff for $2,092. Judgment having been entered on the verdict, the defendant company took this appeal, specifying that the court erred :

1. In the refusal of the defendant's offer.[1]

2–5. In the portions of the charge embraced in [ ] [2 to 5]

6. "In submitting to the jury a question of fact about which there was no evidence."

7, 8. In the answers to the plaintiff's points. [7] [8]

*Mr. John H. Murdoch*, for the appellant:

1. The letter, exhibit 11, was material to the issue, because it tended to sustain the allegation of the defendant that the parties produced by the plaintiff had no bona fide intention of becoming purchasers. It was relevant because it related solely to the matter of the purchase of the property. It was competent because it formed one link in the chain of facts and circumstances. It was written by a person whom the plaintiff had held out as the responsible purchaser and was the closing act of the whole matter. Had the letter been written by Logan it certainly would have been competent evidence to show his intentions; being written by his principal it should at least have as much weight as if written by himself.

2. The plaintiff was not the agent of the defendant nor was he a real estate broker. He had, at his own request, received an option upon the property and was offering it for sale for his own benefit. To entitle him to the $2,000 mentioned in his agreement with the defendant company, he was bound to show either an actual sale, which was not pretended to have been made, or a bona fide contract of sale with a purchaser produced by him, *and* that that contract was improperly defeated in some way by the defendant company. The proof of the contract without proof of its being defeated by some act or failure on the part of the defendant would not be sufficient, and it was upon this ground that defendant moved for a compulsory non-suit, which was refused by the court.

3. If any one is able to tell why the sale was never consummated, W. P. Logan was able to do so. He testified that it was because his attorney could not approve all the titles. The court below said to the jury that it was claimed that there was a contract of sale which the defendants failed to carry out, yet from the beginning to the end of the case there is not a word of testimony to show that the defendant failed to do anything; on the other hand the plaintiff's case only showed failure of title for which the defendant was not responsible. The court said to the jury, second assignment, that the question whether the defendant had prevented the consummation of the sale by a failure to do that which it was bound to do was, in the opinion of the court, "really the point in the case."

4. "To submit a fact destitute of evidence as one that may

nevertheless be found, is an encouragement to err, which cannot be too closely observed, or unsparingly corrected: Stauffer v. Latshaw, 2 W. 167. " A jury ought never to be left to mere conjectures, when sympathy or some other equally improper motive will be sure to turn the scale. It is not too much to insist that there shall be evidence of circumstances on which the conclusion asked for may be reasonably predicated: " Raby v. Cell, 85 Pa. 80. We claim therefore that there being no evidence whatever that the defendant had agreed, or was in any way bound to do anything towards perfecting the titles, or that it failed, neglected or refused so to do, it was error to submit the question to the jury.

5. Both the first and second points submitted to the court on behalf of the plaintiff should have been unqualifiedly refused. These points would have been entitled to an affirmance, if the plaintiff had been either a real estate broker or an agent: Keys v. Johnson, 68 Pa. 42. He testified, however, that he was neither, and all the evidence in the case shows the same thing. Why then should the points be affirmed by the court, even subject to what was said in the general charge, when they were based upon an unsound theory? The affirmance of these two points, with a reference to the general charge, served to intensify the error of submitting to the jury a question of fact unsupported by evidence.

*Mr. M. L. A. McCracken* (with him *Mr. M. H. Stevenson*), for the appellee:

1. The only witness called by the defendant to prove the letter, exhibit 11, testified he had no knowledge of the signature, and there was not even an attempt to show any circumstances which would give the letter the ear-marks of genuineness. But, even if the letter was not inadmissible for these reasons, it was properly excluded for the reason that it did not tend even to prove what it was offered for, to wit, that Col. Potts, though interested, was not interested as a purchaser in the way alleged by Mr. Logan.

2. In order to know whether the court's instructions to the jury were correct or not, we must know what were the terms of this contract of sale. The contract consisted of the company's " proposition " of April 20th, and W. P. Logan's tele

gram of acceptance dated four days later, April 24th. This telegram proposed no new terms, but confined itself entirely to an acceptance of the company's proposition. Consequently if we would acquaint ourselves with the terms of this contract of sale, we must look to the company's "proposition" alone, because from no other source can the terms of sale be ascertained.

3. The company empowered the plaintiff to sell their property but said nothing in the original article in regard to warranting titles. But upon the plaintiff's producing them a purchaser in the person of W. P. Logan, they hold a meeting and come to a "conclusion" in which they propose that one of the terms of sale shall be that their "titles and franchises to be subject to proper examination and approval:" This, they say, is "the conclusion arrived at in our meeting," etc., and appears to be the result of deliberation by the members of the company. This proposition was made April 20th and was forwarded to W. P. Logan, who accepted it by telegram April 24th, and the sale was consummated so far as the plaintiff to this action was concerned.

4. On the trial of the case below, neither M. Sharp, president, nor A. M. Brown, secretary, made any pretence to ignorance of the defects in the titles, but on the contrary it appeared that they not only had full knowledge of them but made every effort to correct them. Nor was it incumbent upon the plaintiff to show that these defects could have been cured by the efforts of the defendant company. By incorporating into their proposition of sale a stipulation that their titles were to be subject to examination and approval, they engaged to make their titles at least marketable; and what reason have they to complain that the court held them up to their undertaking, or to deprive the plaintiff of his compensation after he has produced a bona fide purchaser, simply because they cannot come up to terms of their own proposing?

OPINION, MR. JUSTICE STERRETT:

There was no error in excluding the letter offered "for the purpose of showing that Col. Potts, although interested, was not interested as a purchaser in the way alleged by Mr. Logan."

The letter in question was rightly rejected, for the reason

that the proof of its genuineness was insufficient. When shown to the witness, and he was asked if it was a letter he had received from Col. Potts, he replied: "This is a letter I received by mail, and it has the signature of Joseph D. Potts, but I have no knowledge of his signature." That is about as near as the evidence comes to proving the genuineness of the letter, and surely it falls far short of the standard of proof necessary to admit in evidence any private writing. But, even if the letter had been properly shown to be genuine, it was rightly excluded, for the reason that it did not tend to prove what it was offered for. The first specification is not sustained.

The second to fifth specifications, inclusive, are to the portions of the charge recited therein, respectively. Viewing each in the light of the evidence, we are unable to discover any error in either of them.

The sixth specification is not according to rule, and therefore not entitled to notice. It simply complains that "the court erred in submitting to the jury a question of fact about which there is no evidence." What that question of fact is we are not informed. In an examination of the record, however, we have not found any such question.

The case hinged entirely on facts, which the evidence tended to prove, and of which plaintiff's first and second points for charge are predicated, viz.:

"1. If the jury believe from the evidence that the plaintiff, John F. Sweeney, produced to the defendant corporation a purchaser in the person of W. P. Logan, to whom the company made a proposition of sale, and that the said Logan in good faith accepted said proposition, then a sale was made, and the plaintiff is entitled to recover the full sum of $2,000.

"2. If the jury believe from the evidence that the company made a proposition of sale, which the said Logan accepted in good faith, but that the sale failed to be consummated by reason of the defendant company's defective titles, then the plaintiff is entitled to recover."

The affirmance of these points by the court, subject to what had been said in the general charge, constitutes the subject of complaint in the seventh and eighth specifications, respectively. In view of the evidence, it cannot be doubted that these points were rightly affirmed. The jury, as they were warranted in

doing, found the facts of which they were predicated; and that finding is, of course, conclusive of the controversy. The plaintiff procured a purchaser, to whom the company made a proposition of sale, and in good faith that proposition was accepted. That there was a failure to consummate the sale thus effected, was not the fault of the plaintiff.

We find nothing in the record of which appellant has any just reason to complain, and hence the judgment should not be disturbed.

Judgment affirmed.