STATE v. HALL.

1. Under Comp. Laws, § 7244, declaring that, when an offense may have been committed by the use of different means, the means may be alleged in the alternative in the same count in the indictment, where the body of one murdered indicated a homicide effected by shooting and by striking with a heavy instrument co-operatively, and the information for the crime charged conjunctively in a single count that death was caused by shooting and by blows with a heavy instrument, it was not invalid on the ground that the word "may" in Section 7244 was mandatory, and required the statement of the means to be in the alternative.

2. Where, on a prosecution for murder, a witness was shown a letter purporting to have been written by defendant, and he testified he received it in due course of mail, that it was from defendant, and that his name was attached to it, there was not sufficient foundation for

the admission of the letter, it not appearing that witness was familiar with the writing of defendant.

(Opinion filed December 31, 1900.)

Error to circuit court, Hamlin county. HON. JULIAN BENNETT, Judge.

Thomas Hall was convicted of murder and he brings error. Reversed.

Philo Hall, W. M. Cheever, E. W. McLaughlin and C. E. DeLand, for plaintiff in error.

John L. Pyle and A. G. & Aubrey Lawrence, for the state.

FULLER, P. J. The sufficiency of the information upon which plaintiff in error was tried and found guilty of murder as charged, was challenged below by a demurrer which the court overruled, and the point comes to us for review. The complaint made by Ezra Adams, the duly elected, qualified, and acting state's attorney, is "that Thomas Hall, late of said county, at and in the county of Hamlin in the State of South Dakota, on the 20th day of September, A. D. 1897, unlawfully, feloniously, without authority of law, and with a premeditated design to effect the death of Charles LeMay, the person killed, did him, the said Charles Le-May, kill and murder; that the said Thomas Hall, on the said 20th day of September, A. D. 1897, at and on the north banks of Lake Poinsett, and at and in the county of Hamlin and State of South Dakota, with force and arms, did unlawfullly, feloniously, without authority of law, and with a premeditated design to effect the death of Charles LeMay, with a firearm, to-wit, a revolver, then and there charged and loaded with gunpowder and leaden ball, and then and there held in his, the said Thomas Hall's, hand, unlawfully, feloniously, without authority of law, and with a premeditated design to

effect the death of the said Charles LeMay, discharged said firearm, so charged and loaded with gunpowder and leaden ball as aforesaid, at, towards, against and into the body of the said Charles LeMay, which leaden ball so discharged from said firearm, then and there held in the hand of the said Thomas Hall as aforesaid, striking and wounding the body of the said Charles LeMay on and in the left side of the face, and penetrating to and into and through the head and brain of the said Charles LeMay, and did him, the said Charles LeMay, then and there and thereby unlawfully, feloniously, without authority of law, and with a premeditated design to effect the death of him, the said Charles LeMay mortally wound, that the said Thomas Hall, on the same day and at the same time and place, with force and arms, did unlawfully, feloniously, without authority of law, and with a premeditated design to effect the death of the said Charles LeMay with a heavy instrument, the name and kind of which instrument is unknown to said state's attorney, then and there held in his, the said Thomas Hall's hand, unlawfully, feloniously, without authority of law, and with a premeditated design to effect the death of the said Charles Le-May, violently strike with the said instrument, the name and kind of which instrument is unknown to said state's attorney, as aforesaid, at, towards, against, and on the body of the said Charles LeMay, one or more of which said blows so struck with said instrument, the name and kind of which instrument is unknown to the said state's attorney, as aforesaid, then and there held in the hands of the said Thomas Hall, as aforesaid, landing upon and wounding the body of the said Charles LeMay on and upon the left side of the head, and crushing the skull on the said left side of the head of the said Charles LeMay, and did him the said Charles LeMay then and there and thereby unlawfully, feloniously,

without authority of law, and with a premeditated design to effect the death of him, the said Charles LeMay, mortally wound, from which mortal wounds so made as aforesaid the said Charles LeMay then and there instantly died."

The particular objection to be considered is that two dissimilar acts by which the offense was committed are alleged conjunctively in a single count, namely, by shooting with a revolver, and by blows inflicted with a heavy instrument. Section 7244 of the compiled laws provides that, "when the offense may be committed by the use of different means, the means may be alleged in the alternative in the same count," and counsel for the accused maintain that the expression "may be alleged in the alternative" is a mandatory requirement, rendering the information before us of no validity. Where the death dealing means resorted to are of different species, "the particular circumstances of the offense," stated positively, as in this instance, "enable a person of common understanding to know what is meant," and is a more "direct and certain" method than the alternative. In view of the statutory rules from which the foregoing phrases are quoted, and by which the sufficiency of all pleading in criminal procedure must be determined, we are disposed to conclude that the word "may" is used in its ordinary permissive sense, and not to signify the mandatory precept usually imported by the term "must." The body of the deceased, when found and identified, furnished conclusive evidence of a homicide effected by shooting with a revolver and by striking with a heavy instrument, co-operatively. While either of the means employed might alone produce instantaneous death, the exact influence of each upon the vital functions of the victim could not, under the circumstances of this case, be actually demonstrated. However, an allegation that death was produced by the bullet in the

brain, and also by the blow upon the head, is allowable under our system, and sufficient to admit evidence tending to show that death ensued from either, or from both causes combined.

Recently, in sustaining an information charging in a single count the murder of a seaman by shooting and drowning, the United States supreme court, speaking through Mr. Chief Justice FULLER, says: "The government was not required to make the charge in the alternative in separate counts. The mate was shot and his body immediately thrown overboard, and there was no doubt that, if not then dead, the sea completed what the pistol had begun." Anderson v. U. S., 18 Sup. Ct. 689, 42 L. Ed. 1116. So, in Com. v. Desmarteau, 16 Gray. 1, where it was alleged in one count that the murder was caused by both blows and drowning, the charge was held not objectionable, and, moreover, that proof of death resulting from both or either of such means would sustain a conviction. See, also, to the same effect, Com. v. Macloon, 101 Mass. 1; State v. O'Neil, 51 Kan. 651, 33 Pac. 287, 24 L. R. A. 555; Joy v. State, 14 Ind. 139; People v. Cosey, 72 N. Y. 392; Heath v. State (Ga.) 16 S. E. 657; Thomas v. State (Tex. Cr. App.) 26 S. W. 724; People v. Colt, 3 Hill, 432.

The prosecution relied wholly upon circumstantial evidence, of which the following letter is the most probative, and without which a conviction would be doubtful: "Brookings, S. D., July 13, 1898. Mr. W. W. Jones—My Dear Friend: I will drop you a few lines to let you know that I am well and hope you are the same. Well Wake, I have a chance to slip a letter out to you now by my lawyer. Say, Wake, I want you to change the date from October 4th to September 20th, 1897. You know what I mean. It don't make no difference what you told old Horswell about it; you was not under oath then. Will you please do this for me? I can beat my case easy

if you will do that for me. You can save my life if you will do it. Nobody will ever know the difference except you, I, and Harry K. So please do this for me. It will be money in your pocket, for I will never get done paying you. Wake, life is awful sweet to me. You don't know how I feel about. Now I have not done anything to be punished for. They have the wrong man for the wrong thing. I will admit that I was doing some crooked work about the time that they say this man was killed, but I will not tell what it was. I will die before I give a good friend up. I could get out of this scrape if I would give myself and friend away, but, Wake, I will go to hell before I will be a traitor to my friend. So you have my life in your hands now, and if you will do what I ask you to do, I will be a free man in October. Well, old boy, you must do what I ask you. Let we know as soon as you get this. The sheriff reads all my mail, so if you do what I ask you to write as soon as you get this, and tell me all about it. So, good-by. From a friend, Tom Hall."

Plaintiff in error having, on the 4th day of October, 1897, returned from this state to Tarkio, Mo., his former place of residence, was placed under arrest on the same day, while a guest of the witness Jones, who at the time kept a hotel. The letter, if genuine, is conclusive upon the point that the accused attempted to manufacture perjured testimony by which to show that he was, at the time alleged in the information, in a different state from that in which the crime was committed, and thus lay the foundtion for the irresistible inference of innocence. It being conceded at the trial that the purported writer of this letter was at the home of the witness in Missouri on the 4th day of October, any such attempt at subordination of perjury adds force to the evidence of witnesses testifying as to his presence in this state about the 20th of September, and discredits his denial of that fact upon the witness stand. Consequently the contention

of counsel that the same was admitted, over a proper objection without the required preliminary proof, is a matter meriting most careful consideration. For the purpose of identification, the letter and an envelope were marked Exhibits 26 and 27, respectively, and the witness, whose attention was called thereto testified as follows: "Yes, I have seen that envelope before. I got it out of the postoffice in Tariko, Missouri. It was addressed to me, 'W. W. Jones.' That is my name. I got Exhibit 27 at the post office. It was inclosed in that envelope, Exhibit 26. Q. From whom is the letter written? (Objected to by defendant's counsel as calling for a mere conclusion. Objection overruled. Exception taken by defendant.) A. Tom Hall. His name is attached to the letter. I remember when I received it. I think it was in July or August—I wouldn't be sure—1898. I got those two exhibits, 26 and 27, at the post office in Tarkio. Tom Hall is the name attached to the letter. (The state offers in evidence Exhibits 26 and 27. The defendant objects to the introduction of these Exhibits 26 and 27 on the ground that they are irrelevant.) By the court: Q. This was received in the regular course of mail, was it, Mr. Jones? A. Yes, sir. (Defendant also objects to their introduction for the reason that no proper foundation has been laid for their admission. Objection overruled. Exhibits 26 and 27 admitted. Exceptions taken by defendant.)"

All that can rightfully be claimed for this testimony is that the letter, with the name of the accused attached, was received by the witness at Tarkio, Mo., in the regular course of mail, and because the name is attached to such letter the witness concludes that it came from Tom Hall. In order to enable a person to give competent preliminary testimony in relation to the handwriting of one whose purported letter is sought to be introduced in evidence, it must be shown in some manner, pointed out by the law, that the witness is familiar

with the handwriting of such party, and the mere fact that the letter "was received in the regular course of mail" is no proof of authenticity. In 2 Jones, Ev., at Page 599, the rule is stated thus: "Before letters are received in evidence there must be, as in the case of other documents, some proof of their genuineness. This is not proved by the mere fact that the letter is received by mail when the signature is not proved." Here the witness was given no opportunity to show that he possessed any knowledge of the handwriting of Tom Hall, or that he so much as believed the letter to be written by him, or that he had ever seen any of his writing, or any writing purporting to be his, upon which he had acted with the knowledge and acquiescence of the accused. The mere statement that "his name is attached to the letter" is entirely destitute of anything tending to prove that he wrote it, or that the name attached thereto was written with the prisoner's own hand, and its admission, without preliminary proof, was in violation of a most familiar elementary rule. 1 Whart. Ev. 701; 3 Rice, Ev. § 72; Sweeney v. Gas Co., 130 Pa. St. 193, 18 Atl. 612; Woodford v. McClenahan, 9 Ill. 89; Railroad Co. v. Hickman, 28 Pa. St. 318; Gartrell v. Stafford (Neb.) 11 N. W. 732. For an exhaustive treatment of the subject, see Whart. Cr. Ev. (9th Ed.) §§ 550-563, inclusive. Other alleged errors, not likely to again occur, will receive no attention at this time. For the reason that this damaging piece of testimony went to the jury without any proof that the accused is its author, the judgment of the trial court is reversed, and a new trial ordered.