## STATE v. HALL.

1. Defendant, accused of murder, moved for change of venue, on affidavits alleging that on a previous trial he was convicted after great difficulty in obtaining a jury, that the murder and trial had been extensively

published in the county, that many of the citizens had viewed the re-
mains of the deceased, and that there was a strong prejudice against
defendant throughout the county, so that an impartial jury could not
be obtained.  The application was opposed by affidavits of 100 citizens,
many of whom affirmed that they had not heard the case commented
on, and had no prejudice, and could sit impartially as jurors; that
neither defendant nor deceased was a resident of the county: and all
affirmed that there was no prejudice, and, in their opinion, a fair and
impartial trial could be had.  Comp. Laws, § 7312, provides that a
criminal action may be removed when it shall appear to the satisfac-
tion of the court that a fair and impartial trial cannot be had in the
county.  Held, no abuse of discretion to deny the change.

2.  Under Comp. Laws, § 7343, providing that the panel of jurors summoned
on a special venire may be challenged on account of any bias of the
officer who summoned them, which would be good ground of chal-
lenge to a juror, and section 7358, subd. 2, giving as ground of chal-
lenge of a juror the existence of a state of mind which satisfies the
court that the juror cannot try the issue impartially, the overruling
of a challenge to the panel of jurors as summoned by an officer who
heard the former trial, at which defendant was convicted of murder,
and then formed an opinion as to his guilt, but who had not expressed
such opinion, and did not discuss the case with any of the jurors sum-
moned, and who testified that, if called as a juror, he could try the
case impartially, was not error.

3.  On prosecution for murder, a witness testified that he saw defendant
write his name on two exhibits which contained no matter material to
the case, and that the signature purporting to be defendant's on two
other exhibits, which contained material evidence, in witness' opin-
ion, were defendant's signature.  The immaterial exhibits were after-
wards withdrawn from the jury, and the defendant then moved to
strike out the testimony of the witness as to the other exhibits.  Held
not error to deny the motion; the witness having seen defendant sign
his name on one paper, being competent to testify as to the genuine-
ness of his signature to another.

4.  Under Comp. Laws, § 5310, providing that an entry made by an officer
in the course of official duty is prima facie evidence of the facts stated
in such entry, entries in a book, regularly kept by a postmaster in his

office, of advices received and money orders drawn, are competent evidence of the facts stated therein, though it is not shown that there is any statute or postal regulation requiring the keeping of such book.

(Opinion filed July 2, 1902.)

Error to circuit court, Hamlin county. Hon. L. E. GAFFY, Judge.

Thomas Hall was convicted of murder and appeals. Affirmed.

*C. H. Winsor*, for plaintiff in error.

*A. W. Burt*, Att'y Gen., *Alva E. Taylor*, Asst. Att'y Gen., and *Aubrey Lawrence*, State's Att'y, Hamlin county, for the state.

CORSON, J. The plaintiff in error was convicted of the crime of murder, on an information duly filed by the state's attorney of Hamlin county. He sued out a writ of error, and upon the hearing of the same in this court the judgment of the court below was reversed. The case is reported in 14 S.D. 161, 84 N. W. 766. Upon the second trial he was again found guilty by the jury, and his case is now before this court upon the second writ of error for review. There are a large number of errors assigned in the record, but, as the learned counsel for the plaintiff in error relies upon four for the reversal of the judgment, this court will limit itself, in the consideration of the case, to those discussed by counsel.

The first error assigned is that the circuit court erred in its refusal to grant the motion of the accused to change the place of trial from Hamlin county. The motion was made upon the ground that a fair and impartial trial could not be had in that county. The motion for such change was based on section 7312, Comp. Laws, as amended by chapter 50, Laws 1891, in

which it is provided that "a criminal action * * * may at any time before trial is begun, on the application of the defendant, be removed from the court in which it is pending * * * whenever it shall appear to the satisfaction of the court * * * that a fair and impartial trial cannot be had in such county or subdivision. * * *" It will be observed that, whenever "it shall appear to the satisfaction of the court" that a fair trial cannot be had, the court may order the person accused to be tried in another county. The motion in this case was supported by a number of affidavits, and resisted by about 100 affidavits on the part of the state. In the affidavits on the part of the accused were stated in detail, and at considerable length, the grounds of the motion, among which are that the body of the deceased, with certain wounds thereon, was seen by numerous citizens and residents of the county of Hamlin, and that ever since the arrest of the accused an intense prejudice and public feeling had been manifested against him by the people of said county; that the newspapers of said county had published articles strongly prejudicial to the accused; that much difficulty had existed in obtaining an impartial jury on the first trial of the cause; that a large number of the residents of said county were in attendance at the trial, and heard the evidence given therein; and that the case had been much discussed by the people of said county. It was shown, however, by the affidavits on the part of the state, that neither the accused nor deceased was a resident of the county, and that, in the opinion of the affiants, a fair and impartial trial could be had in that county; and several of the persons making affidavits stated that they had never heard the case discussed, and that they were severally competent to sit upon the jury. While

undoubtedly there was some feeling, and possibly prejudice, against the accused, on the part of many persons in that county, caused by their belief that he was guilty of the crime charged, still we cannot say that the learned circuit court committed error in denying the motion. On the motion of the accused alleging prejudice on the part of the trial judge of that circuit, another circuit judge had been called in to try the case, who, we must presume, was entirely impartial and unbiased, and who, in passing upon the motion, for a change of venue, gave the affidavits on the part of the accused, as well as on the part of the state, full and careful consideration. And so far as the record in this case discloses, a fair and impartial jury was impaneled for the trial of the said cause. The learned counsel for the accused places much reliance upon the case of State v. Billings, 77 Iowa, 417, 42 N. W. 456. The statement of facts in that case, on which a motion for a change of venue was based, showed not only a very strong feeling against the accused on the part of the people, but that the excitement was so great that there were threats of lynching. The supreme court of Iowa was not unanimous in its decision; the writer of the opinion stating that he did not concur in the view of the majority of the court, as he regarded it in conflict with the cases of State v. Read, 49 Iowa, 85, and State v. Perigo, 70 Iowa, 657, 28 N. W. 452. The two cases cited present a state of facts which, in our opinion, are more strongly in favor of the change of venue than those in the case at bar; but the change of venue was refused in each case by the trial court, and the supreme court sustained the rulings of the court below on the ground that granting or refusing the motion was in the sound discretion of the trial court, and that the facts of the cases disclosed

no abuse of that discretion. We cannot say, after a careful review of the affidavits, that the learned circuit court in the case at bar committed error in denying the motion of the accused to change the place of trial, or abused its discretion.

The next alleged error discussed by counsel is that the court erred in overruling the challenge to the panel of talesmen on the ground of bias of the officer who summoned the same. The provisions of section 7347, Comp. Laws, are that: "When the panel is formed from persons whose names are not drawn as jurors a challenge may be taken to the panel on account of any bias of the officer who summoned them which would be good ground of challenge to a juror. Such challenge must be made in the same form and determined in the same manner as if made to a juror." Section 7358 provides: "Particular causes of challenge are of two kinds: (1) For such a bias as when the existence of the facts is ascertained, in judgment of law, disqualifies the juror, and which is known in this code as implied bias. (2) For the existence of a state of mind on the part of the juror, in reference to the case or either party, which satisfies the court, in the exercise of a sound discretion, that he cannot try the issue impartially, without prejudice to the substantial rights of the party challenging and which is known in this code as actual bias." Section 7359 defines causes for which a challenge for implied bias may be taken. It is contended on the part of the accused that it was shown by an examination of the officer that the challenge was properly taken under the second subdivision of section 7358. It will be noticed by this subdivision that the challenge may be allowed or disallowed by the trial court "in the exercise of a sound discretion." While it appeared from the examination of the officer

who summoned the jurors that he had heard the evidence on the former trial, and had formed an opinion as to the guilt or innocence of the acuused, he had never expressed any opinion, and stated that, if called as a juror in the case, he could try the case impartially, and render a verdict in accordance with the evidence that might be given on the trial. It affirmatively appears from the evidence that the officer had no actual bias or prejudice against the accused, and that no names of persons to act as jurors were given to him, and that he had had no conversation with any juror that he summoned with regard to the merits of the case. As will have been noticed, the officer was not absolutely disqualified. Whether or not, therefore, he was disqualified, was a matter within the sound judicial discretion of the trial court. While the existence of an opinion founded upon hearing the evidence at a former trial did undoubtedly lead the trial court to exercise great care in determining the competency of the officer, it was not, as a matter of law, an ab solute disqualification. The personal appearance and demeanor of the officer, and the intelligence and want of prejudice exhibited by him upon the examination, are important factors in reaching a just conclusion as to the probability of the officer having improperly used his position as a summoning officer. These aids to a correct judgment are not available to this court on appeal. The court might very properly, therefore, after his examination of the officer, and in the light of all his statements, have held him competent. as he would have held a juror under like circumstances, and overruled the challenge; and this court would not, excepting in a very clear case of abuse of this discretion reverse the ruling of the trial court. People v. McGonegal, 136 N. Y. 62, 32 N. E. 616. As bearing

upon this question see State v. Chapman, 1 S. D. 414; Haugen v. Railway Co., 3 S. D. 394, 53 N. W. 769; State v. LeCroix, 8 S. D. 374, 66 N. W. 944.

The third error discussed by counsel for accused is that the court erred in not withdrawing from the jury the evidence of one Bristow in regard to the signature of the accused on Exhibits 21 and 25, after withdrawing from the jury Exhibits 23 and 24. Exhibits 21 and 25 were two instruments claimed to have been signed by the accused, and constituted material evidence on the part of the state. Exhibits 23 and 24 were two instruments not material to the prosecution, but which were shown by the witness to have been endorsed by the accused in his presence. Counsel for the accused contends that Bristow based his testimony as to the signatures upon Exhibits 21 and 25 upon the signatures to Exhibits 23 and 24, but we do not take that view of the evidence. The witness Bristow had shown clearly by his evidence that he was acquainted with the signature of the accused, and that the signatures purporting to be his upon Exhibits 21 and 25 were, in his opinion, his signatures. His evidence therefore, was admissible, independently of the two Exhibits 23 and 24, and established the fact, if the jury believed his testimony. that the signatures to Exhibits 21 and 25 were the signatures of the accused. It may be stated as a general rule that, if one has seen a party write, he is competent to give an opinion as to whether or not the signature purporting to be his is in fact his signature. 2 Jones Ev. § 559; 1 Greenl. Ev. § 577; State v. Farrington, 90 Iowa, 673, 57 N. W. 606; Com. v. Nefus, 135 Mass, 533; State v. Zimmerman, 47 Kan. 242, 27 Pac. 999; Long v. Little, 119 Ill. 600, 8 N. E. 194; Moon's Adm'r v. Crowder, 72 Ala. 79; Bank v. Arm-

strong, 66 Md. 113, 6 Atl 584, 59 Am. Rep. 156; 15 Am. & Eng. Enc. Law. 255. The state had laid the foundation for the evidence of the witness, showing that he had seen the accused sign his name in two or more instances. The court therefore committed no error in refusing to strike out Mr. Bristow's evidence.

The last error assigned, discussed by counsel for the accused, is that the court erred in admitting certain books in evidence kept in the postoffice at Tarkio, Mo.. entitled, "Registered Advices Received and Money Orders Drawn." The alleged error is that the court erred in admitting these books in evidence, for the reason that it was not shown that they were required to be kept by law, and there was no proof of any regulation of the postoffice department requiring such books to be kept. It is contended on the part of the state that being books kept by the postmaster, and being found in the postoffice, they were admissible upon proof of these facts. The books were introduced in evidence for the purpose of showing that a certain money order issued by the postoffice at Hartford, in this state, was cashed at the Tarkio postoffice. The entries in that book were not made by the witness, but the testimony shows that it was one of the records in that office, and had been in the office while the witness had been a clerk there, and that they were in the custody of the postmaster, and were a part of the records of the office found there at the time the witness entered upon his duties as clerk; that it was one of the records of the office which had been used and kept by a former postmaster, and was delivered to the witness by the present postmaster to bring to the trial; and that a similar record was kept by the present postmaster. We are of the

opinion that the objections of the counsel for the accused are
not tenable. It is quite clear from the testimony of the witness
that the books offered in evidence were records of transactions
made in the office of the postmaster at Tarkio, necessary and
proper in the orderly conduct of the business of that office. In
other words they seem to have been official registers or records
kept by a person in a public office, in which they were required
either by statute or by the nature of his office. Mr. Jones in
his work on Evidence, says, "When persons in public offices
are required by statute or by the nature of their offices to write
down particular transactions occurring in the course of their
public duties and under their personal observation, such rec-
ords are generally admissible in evidence." And among the
various records mentioned as admissible are "the record of
registered letters received at the postoffice." Certainly, if such
record was necessary and proper to be kept, a register of ad-
vices received and money orders drawn would be absolutely
necessary in the orderly conduct of business in a registry order
postoffice. The necessity for such a record is apparent for the
orderly conduct of the duties of the office. Such a record,
though kept by a former postmaster, is a record of the office,
which must be regarded as prima facie evidence of the facts
therein contained. Mr. Taylor, in his work on evidence, states
as admissible "official registers or records kept by persons in
public office, in which they are required, either by statute or
by the nature of their office, to write down particular transac-
tions occurring in the course of their public duties, or under
their personal observation." Tayl. Ev. § 1429. Mr. Green-
leaf, in his work on Evidence, cites with approval the follow-
ing decision in a note to section 496: "Whenever a written

record of the transactions of a public officer in his office is a convenient and appropriate mode of discharging the duties of the office, it is his duty to keep that record, whether required by law so to do or not; and such record is a public record, belonging to the public, and not to the officer. Coleman v. Com., 25 Grat. 865, 23 Am. Rep. 711." The views of these authors are fully sustained by the supreme court of the United States in Evanston v. Gunn, 99 U. S. 660, 25 L. Ed. 306. In that case the question arose upon the admission in evidence of the record kept by an officer of the United States signal service at Chicago. The court, in its opinion, says: "It may be admitted there is no statute expressly authorizing the admission of such a record as proof of the facts stated in it, but many records are properly admitted without the aid of any statute The inquiry to be made is, what is the character of the instrument? The record admitted in this case was not a private entry or memorandum. It had been kept by a person whose public duty it was to record truly the facts stated in it." It then quotes with approval the rule as above quoted from Taylor on evidence and says: "To entitle them [records] to admission, it is not necessary that the statute requires that they be kept. It is sufficient that they are kept in the discharge of a public duty." And that learned court held that the record of the signal officer was properly admitted. Section 5310 Comp. Laws, which reads as follows: "An entry made by an officer, or board of officers, or under the direction and in the presence of either, in the course of official duty, is prima facie evidence of the facts stated in such entry,"—seems to have been intended to embody the rule laid down in these authorities.

Finding no error in the record, the judgment of the circuit court, and order denying a new trial, are affirmed.