King, J.,
delivered the opinion of the court.
Plaintiff in error brought suit to recover from defendants a sum alleged to be due as commission earned under the following contract, dated July 28, 1910:
“In consideration of the agreement of The W. T. Craft Realty Co. hereinafter contained, I hereby give to said Company, for 120 days from this date, the exclusive agency for the sale of the property and for the price and terms described upon the reverse of this card, and agree to pay to said Company a full regular commission if the property is sold or exchanged through its agency or otherwise during said period, at the within price or any price accepted by me.” (Signed by defendant Livernash.)
“We hereby accept the above agency and agree to use our best efforts to effect a sale.” (Signed by plaintiff.)
The terms on the reverse side of the card were $8,850 for property in Denver therein described, The testimony offered by plaintiff and admitted was not disputed by defendants. It showed that plaintiff advertised the property for sale; that upon reading said advertisement, Felix A. Richardson called upon plaintiff, was shown the property, and advised of the terms given by defendant to plaintiff, and accepted the same, paid $100 to the agent to bind the bargain, and offered to pay in full within fourteen days, upon receipt of a deed and abstract showing good title, and that he was ready, able and willing to comply with the terms if the title to the property was found to be merchantable. This ■ purchaser was found, and accepted the terms, on or about the 27th day of August. On the same day the defendant Livernash was notified of the sale, by *3 letter addressed to her at Fort Collins, Colorado, at which place she resided, advised of the cash deposit, and that the balance was to be paid, on or before fourteen days, provided abstract should show title perfect and clear of encumbrance. In response to this letter, the defendant wrote, expressing satisfaction, advising the plaintiff that the abstract was in the hands of her attorney, Mr. John H. Gabriel, at Denver, where plaintiff could get it, and that thereafter “all papers can be handled through Mr. Gabriel, who will advise me.” On the 9th day of September, upon examination of the abstract, Mr. Richardson’s attorney found the title seriously defective, and so reported in a carefully written opinion, which was by plaintiff delivered to Mr. Gabriel. On the 13th of September plaintiff notified defendant of the attorney’s report, and that the opinion had been delivered to Mr. Gabriel. The defect in the title which rendered it unmerchantable was admitted by defendants’ attorney, who thereafter, at a time not disclosed, instituted proceedings to quiet title, which, it seems, at some later date, not disclosed, but prior to the trial in the district court, had resulted in a judgment quieting title. • This cause was first tried in the county court, where judgment went in favor of plaintiff. Appeal was taken to the district court; trial there had on May 14, 1913, whereupon judgment was rendered in favor of defendant. Plaintiff offered in evidence a written agreement entered into on the 27th day of August, 1910, between the plaintiff and the said Richardson, embodying the terms and conditions upon which said Richardson agreed to take the property and make the payments. On objection of defendants’ counsel, said agreement was excluded from evidence. Plaintiff excepted, but the exclusion of the agreement is not assigned as error.
Some time after receiving the opinion of his attorney, Richardson demanded a return of the sum deposited by him, but extended “for ten days or more” the time for examination of the title, and to ascertain whether the defect could *4 be cured. The evidence seems to show that the deposit was repaid to him on the 10th day of October, 1910.
Among other things, the complaint alleged that the purchaser procured by the plaintiff refused to accept the title “for the reason that the same was not a good and merchantable title, and could not be corrected within a reasonable time.” Defendants, by answer, admitted that the title was defective, but denied that it could not be corrected within a reasonable time; alleged that said defect was unknown to defendants; that it was such that it could be corrected within a reasonable time; xhat as soon as they were advised of said defect they made every effort and exercised every diligence to correct the same, “and that the said title is now being corrected and perfected.” This answer was filed on the 26th day of April, 1912, one year and eight months after the purchaser was procured.
1. We think the judgment cannot be affirmed. We do not agree with the theory of the appellees upon the evidence admitted. The theory of the defense was stated by counsel as follows:
“It is based upon the fact that there was no contract entered into with us at all, nor was this purchaser ever produced to us. There was no sale within the rule of law. He (the broker) must either bring the proposed purchaser and the owner together, so that they may make a contract, or he must furnish the owner an executed contract, so that the owner can hold the purchaser. That is the ground upon which I stand- entirely. As to this defect in the title, we have admitted that it was there, because we proceeded to correct it. I might say that we substantially-admit every-t-hing'here as to the evidence. We have no question that Mr. Craft found Mr. Richardson, and that Mr. Richardson was ready, able and willing to buy, but he never brought Mr. Richardson to Mrs. Livernash, the owner of the property; they never met or talked together about it; he did not produce to her any contract of any kind or nature; and *5 there was none signed of any kind or nature, so that he never, within that rule of law, ever produced the purchaser to the owner of the property.”
We think that, within the rule of law as recognized in this state, there was a “sale” by the broker; that a purchaser was “produced” to the owner; that plaintiff was not required to secure the execution of a binding contract by the defendants and-Richardson, and that plaintiff was entitled to judgment for for his commission, unless the sale so made failed of consummation through his fault.
The employment of the plaintiff as a broker, as evidenced by the written agreement quoted, is nothing more than an ordinary general employment of a broker “to sell” real estate upon terms proposed by the owner, and in which the broker was given an exclusive agency for a specified time. By such employment no power was given to the broker to execute a contract on behalf of the owner that would be binding upon her, nor was it given any other control over the property or its title. In law, the broker was employed only to procurer purchaser, and when, within the time fixed, it produced a purchaser ready, able and willing to buy on the-terms stated by the owner, and acceptable to her, it performed its part of the agreement, and did all' it was employed to do. Buckingham v. Harris, 10 Colo., 455, 15 Pac., 817; Ross v. Smiley, 18 Colo. App., 204, 70 Pac., 766; Finnerty v. Fritz, 5 Colo., 174; Cawker v. Apple, 15 Colo., 141, 25 Pac., 181; Goodridge v. Holladay, 18 Ill. App., 363. In order to satisfy a general contract of employment to sell real estate, ft is not necessary that a broker shall secure the execution of a written or binding contract between the owner and the proposed purchaser. In Buckingham v. Harris, supra, the court cites with approval Doty v. Miller, 43 Barb., 529, in which the law is stated that a broker or agent who undertakes to sell property for another for a certain commission has earned and can recover his commission when he finds a purchaser willing to purchase *6 at the price, though the sale was never completed, if the failure to complete the same was in consequence of a defect of title, and without any fault of the broker or his agent; also Delaplaine v. Turnley, 44 Wis., 31, in which it was held that if a broker, employed to sell property at a price satisfactory to his principal, produces a party ready to make the purchase at a satisfactory price, the principal cannot relieve himself from liability to the broker. Moses v. Bierling, 31 N. Y., 462, in which it is said that a broker employed to make a sale is entitled to his commission when he produces a party ready to make the purchase; also Hart v. Hoffman, 44 How. Prac., 168, in which it is ruled that where a broker, employed to sell real estate, procures a party willing to purchase on the owner’s terms, the broker has earned his commissions. After adopting the rule stated in these several cases, the supreme court sustained the trial court in the refusal of an instruction that the broker is not entitled to his commission until he has completed a, valid contract of sale, binding upon both vendor and vendee, and held that in the general employment of a broker to sell real estate, the broker is given no power over the title, or control of the property itself; that the broker is employed only to procure a purchaser; that for the broker’s use, the terms of sale alone are sufficient, and when he has procured a purchaser ready, able and willing to buy on those terms, he has performed his part, done all he can do, and all he was employed to do; and such seems to have been the uniform ruling of the courts of this state since that opinion was handed down. The settled construction put upon the general employment of professional brokers “to sell” or to “close a bargain” concerning real estate, is that such employment is authority to find a purchaser at the price named, and does not confer power upon the agent to execute a written contract binding upon the owner. Duffy v. Hobson, 40 Calif., 240, 244, 6 Am. Rep., 617; Rutenberg v. Main, 47 Calif., 213, 219; Desmond v. Stebbins, 140 Mass., *7 339, 5 N. E., 150; Ross v. Smiley, supra. The agent is not required to do what he has no authority to do.
2. Upon the undisputed facts, the only reason the sale was not consummated was because the title to the property offered by defendants was not merchantable. The condition of the title was not known to the plaintiff at the time it procured the purchaser. It is the law in this state that when the vendor of property offers it for sale without reservation as to the character of the title, he impliedly warrants to the vendee that the title is good, merchantable, and free from substantial defects. Price v. Immel, 48 Colo., 163, 170, 109 Pac., 941. So, also, when the property is placed in the hands of a real estate broker for sale, and he does not know, at the time he contracts to sell the same, of 'the defect in title which ultimately defeats his efforts, he has the right to assume, and his principal impliedly warrants, that the title to the property he deals With is free from infirmity. Berg v. San Antonio S. R. Co., 17 Tex. Civ. App., 291, 42 S. W., 647, 43 S. W., 929; Gauthier v. West, 45 Minn., 192, 47 N. W., 656; Birmingham Co. v. Thompson, 86 Ala., 146, 5 South,, 473; Sweeney v. Oil Co., 130 Pa., 193, 18 Atl., 612; Phelps v. Prusch, 83 Cal., 626, 23 Pac., 1111; Peet v. Sherwood, 43 Minn., 447, 45 N. W., 859; Gonzales v. Broad, 57 Cal., 224. Consequently, if the plaintiff’s efforts in this case were defeated because of the defect in the title, such failure was not through its fault, and it cannot thereby be deprived of its right to recover the compensation agreed upon. As between the plaintiff and the defendants, as well as between the defendants and Richardson, the defendants alone were responsible for the defect in title, and although they were ignorant of such defect, it is nevertheless regarded as through their fault that the sale was not completed. Monk v. Parker, 180 Mass., 246, 163 N. E., 793; Goodridge v. Holladay, supra.,
3. Defendants in error contend that, under the evidence, the plaintiff did not find or procure or produce a pur *8 chaser, within the meaning of those terms as applied to the finding, procurement or production of a purchaser, in contracts of brokerage, because (it is contended) it did not give the purchaser’s name to defendant, or bring the defendant and the proposed purchaser together. The evidence shows that the first notice given by plaintiff to defendants did not contain the name of the purchaser, but that his name and address in Denver did come to the knowledge of defendants, and to their attorney, on or about the 12th day of September, and that they had ample opportunity after obtaining such notice, and before the deposit was withdrawn, and while Mr. Richardson was still ready, able and willing to purchase the property, to negotiate with him and demand such written contracts as might be necessary and binding, both upon vendor and vendee; and defendants’ failure so to do cannot be charged to the plaintiff in this case. We think the evidence fully and conclusively establishes the allegations that plaintiff found, procured and produced to the defendants a purchaser ready, able and willing to purchase, and that the sale would have been consummated except for the defect in title. Ross v. Smiley, supra, fully supports this conclusion. In that case, the purchaser was in New York, and the owner in Denver, and it does not appear that they were in closer proximity during the negotiations. Strout v. Kenney, 107 N. Y. Sup., 92.
4. An issue seems to have been made by the pleadings upon the question of whether the admitted defect in the title could be or was cured within a reasonable time. The only evidence offered which seems to make that issue material is contained in the written agreement made between the plaintiff and Mr. Richardson, which agreement, we think, should have been admitted; but as that evidence was excluded (upon the objection of defendants’ counsel), it cannot be presumed, in their favor, that the trial court considered such evidence, or based its finding and judgment upon a dispute as to what constituted a reasonable time. *9 Moreover, it is shown by defendants’ answer that the title was still in the process of litigation one year and eight months after the purchaser had been produced;’and, in the state of the record, this court is not prepared to say that the title was, or could be, cured within a reasonable time. Upon that question we express no opinion.
Reversed.
Cunningham, P. J., and Hurlbut, J., concur.
Bell, J., concurs specially.
Morgan, J., dissents.